[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 00-11653

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 06, 2001
THOMAS K. KAHN
CLERK

D. C. Docket No. 97-03291-CV-JLK

MARGARET MCKINLEY,

Plaintiff-Appellant,

versus

BRUCE KAPLAN, in his official
capacity, MIAMI-DADE COUNTY,
a political subdivision of the State of
Florida,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 6, 2001)**


Before ANDERSON, Chief Judge, FAY and BRIGHT*, Circuit Judges.

FAY, Circuit Judge:

_____
*Honorable Myron H. Bright, U.S. Court of Appeals for the Eighth Circuit, sitting by designation.

## I. Introduction

Appellant Margaret McKinley ("Appellant") appeals a final summary judgment entered in favor of Miami-Dade County ("the County") on her claims that the County violated her First and Fourteenth Amendment rights.[1] Appellant contends that she was fired from her position on a County advisory board because of a public statement she made regarding a County policy with which she disagreed. The district court entered summary judgment in favor of the County, concluding that the First Amendment did not provide Appellant the right to continued government employment.

We review summary judgment determinations de novo, applying the same standards as the district court. Morris v. Crow, 117 F.3d 449, 455 (11th Cir. 1997). For the reasons set forth more fully below, we agree with the district court that Appellant's First Amendment rights were not violated, and we affirm the summary judgment in favor of the County.

## II. Factual and Procedural History

The County is a subdivision of the State of Florida and is governed by a thirteen member board of County Commissioners ("County Commission") and an executive

---

[1] The Fourteenth Amendment is the constitutional provision that makes the First Amendment applicable to state and local governments. Wallace v. Jaffree, 472 U.S. 38, 49, 105 S. Ct. 2479, 2485-86, 86 L.Ed.2d 29 (1985).

Mayor. Appellant served as a voluntary, unpaid member of the Miami-Dade County Film, Print, and Broadcast Advisory Board ("the Film Board"). The Film Board is one of several advisory boards created by the County Commission whose purpose it was to advise and make recommendations to the Commission. Appellant was initially appointed to the Film Board by Commissioner Mary Collins. Commissioner Bruce Kaplan ("Commissioner Kaplan") reappointed Appellant to the Film Board when he took office in 1993. During his campaign, Commissioner Kaplan made his position on Cuba and his opposition to Fidel Castro well known. In March 1996, he authored and sponsored Resolution No. R-202-96 ("the Resolution"), which directed the County Manager to create a policy prohibiting contracts between the County and any firms doing business either directly or indirectly with Cuba. The County Commission unanimously adopted the Resolution.

In September 1997, the Midem Organization announced plans to conduct a Latin music conference in Miami Beach ("the Midem Conference"). After determining that the Midem Organization was doing business with Cuba by inviting Cuban artists to perform at the Midem Conference, the County concluded that the Resolution prevented it from providing any public funding for the event. Following the County's determination that the Resolution prevented it from funding the event, Appellant made a statement at a public meeting held by the Miami Beach Fashion,

Film, Television and Recording Committee to the effect that losing the Midem Conference would hurt Miami's entertainment industry and that the Resolution improperly reflected only the views of the Cuban-American community. Appellant's statement was quoted in the Miami Herald as follows:

> While we respect and appreciate the concerns of Cuban-Americans in the exile community, allowing a few people's political standpoint to dictate the potential economic growth of the area is not for the benefit of the community as a whole.

In addition to making the aforementioned statement, Appellant signed a resolution on behalf of the Miami Beach Fashion, Film, Television, and Recording Committee, recommending that the Miami Beach Mayor and Commission urge the County Mayor and Commission to keep the Midem Conference in the County despite the County Resolution otherwise prohibiting it.

Upon reading Appellant's statements, Commissioner Kaplan, whose constituents were predominately Hispanic, concluded that Appellant was advocating a direct break with stated County policy and that he no longer wished to have her serve as his appointee to the Film Board. In a letter addressed to Appellant, Commissioner Kaplan advised her that her comments were inappropriate and insulting to the community that he represented and that he would be removing her as his

4

appointee to the Film Board. Later that day, in accordance with § 2-11.38[2] of the Miami-Dade County Code ("County Code"), Commissioner Kaplan asked that the County Commission remove Appellant from her position on the Board. The Commission obliged Kaplan's request and reaffirmed its decision to remove Appellant by a vote of eleven to one later that same day.

Following her removal from the Film Board, Appellant filed suit under 42 U.S.C. § 1983 against the County and against Commissioner Kaplan in his official capacity.[3] She alleged that her removal from the Film Board violated her First and Fourteenth Amendment rights. The district court granted summary judgment in favor of the County, concluding that the County could remove Appellant without violating the First Amendment because her role on the Film Board involved public contact and providing input into County policy decisions, and she failed to properly represent the

[2]Section 2-11.38 of the County Code provides in relevant part:
> Any Commissioner who has nominated a citizen to a County board as that term is defined in § 2-11.36 of the Code of Metropolitan Dade County may at any time, with or without cause, request the Board of County Commissioners to remove said board member from his or her position on a County board and recommend a different person to fill the position.

[3]While Appellant's case was pending in the district court, Commissioner Kaplan resigned from the County Commission. Under § 2-11.14.1 of the County Code, Appellant's term on the Film Board would have ended at the time of Kaplan's resignation had she not already been removed. As such, her claim for reinstatement became moot. Appellant moved to amend her complaint to include a claim for damages, and the district court denied the motion. We reversed and remanded with instructions to permit Appellant to amend her complaint to assert a claim for damages. McKinley v. Kaplan, 177 F.3d 1253 (11th Cir. 1999). Appellant filed her Amended Complaint before the district court in August 1999.

views and policies of the County Commission and Commissioner Kaplan to the public.

## III. Discussion

Although the County Code specifically gave Commissioner Kaplan the power to request Appellant's removal "at any time, with or without cause," Appellant correctly notes that public employees cannot be removed simply for exercising their constitutional rights. McMullen v. Carson, 754 F.2d 936, 938 (11th Cir. 1985)(citing Branti v. Finkel, 445 U.S. 507, 514-16, 100 S. Ct. 1287, 1292-93, 63 L.Ed.2d 574 (1980). Nevertheless, a public employee's right to freedom of speech is not absolute because "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." Pickering v. Board of Education v. Township of High School District 205, 391 U.S. 563, 568, 88 S. Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). In cases involving speech by public employees, courts are required to balance the interests of the employees, as citizens, commenting upon matters of public concern, and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. Id.

To determine whether a state actor has retaliated against a public employee based on the employee's protected speech, we use a four-part test based on the

Supreme Court's decision in Pickering.[4] Morris, 117 F.3d at 456. First, we consider whether the employee's speech can be characterized as speech on a matter of public concern. Id.[5] If so, we weigh the employee's First Amendment interest against the government's interest in promoting the efficiency of the public services it performs through its employees. Id. Should the employee prevail on the balancing test, we determine whether the speech played a substantial part in the government's decision to discharge the employee. Id. Finally, if the speech was a substantial motivating

[4]The County makes some argument that Appellant's removal from the Film Board should be analyzed under the body of law governing political patronage dismissals. See Elrod v. Burns, 427 U.S. 347, 96 S. Ct. 2673, 49 L.Ed.2d 547 (1976), and Branti v. Finkel, 445 U.S. 507, 100 S. Ct. 1287, 63 L.Ed.2d 574 (1980). We have held that the Elrod-Branti line of cases applies when a public employee suffers an adverse employment action based on party affiliation or political beliefs rather than the content of the employee's speech or expression. McCabe v. Sharrett, 12 F.3d 1558, 1565-67 (11th Cir. 1994). The Pickering analysis, on the other hand, applies when a public employee suffers an adverse employment action based on the employee's expressive conduct or speech. Id. at 1564; Stough v. Gallagher, 967 F.2d 1523, 1527 (11th Cir. 1992). Because we are primarily concerned with Appellant's speech in the instant case, not her political affiliation or beliefs, we believe that this case is more properly analyzed under the case-by-case balancing approach required by Pickering. The outcome of the Pickering balancing test is a question of law. Shahar v. Bowers, 114 F.3d 1097, 1103, n. 12 (11th Cir. 1997), cert. denied, 522 U.S. 1049, 118 S. Ct. 693, 139 L.Ed.2d 638 (1998).

[5]The Court takes note of the fact that Appellant is not a traditional salaried public employee; but rather an unpaid political appointee to a public advisory board. Other courts have extended the application of the Pickering analysis to cover more than just traditional public employees. See Board of County Commissioners, Wabaunsee County, Kansas v. Umber, 518 U.S. 668 (1996)(applying Pickering analysis to a contractor's First Amendment claim based on the nonrenewal of his contract with a county); Rash-Aldridge v. Ramirez, 96 F.3d 117 (5th Cir. 1996)(applying Pickering test to council member's First Amendment challenge to her removal from appointed position on local planning board). For purposes of our analysis today, we treat Appellant as if she were a salaried employee of the County, thus placing her in the strongest possible position. Nevertheless, the author of this opinion is not entirely comfortable with and not sure that the law requires that we place unpaid political appointees on equal footing with traditional public employees.

factor in the decision, we decide whether the government has shown by a preponderance of the evidence that it would have discharged the employee regardless of the protected conduct. Id.

The County does not dispute that Appellant's statement pertained to a matter of public concern, that it removed Appellant from the Film Board based on her statement, or that it would not have removed Appellant but for her statement. Therefore, we need only address the balancing prong of the Pickering test. On Appellant's side of the scale is her interest in voicing her opinion on a controversial county resolution. On the County and Commissioner Kaplan's side is their need to maintain loyalty, discipline, and good working relationships with those employees and board members they appoint and supervise. Dartland v. Metropolitan Dade County, 866 F.2d 1321, 1324 (11th Cir. 1989)(citing Pickering, 391 U.S. at 570-73, 88 S. Ct. at 1735-37).

After reviewing the parties' arguments and the record in this matter, we believe that several factors combine to tip the First Amendment balance in favor of the County. First, our cases indicate that governments have a strong interest in staffing their offices with employees that they fully trust, particularly when the employees occupy advisory or policy-making roles. Shahar, 114 F.3d at 1103-04; Sims v. Metropolitan Dade County, 972 F.2d 1230, 1237-38 (11th Cir. 1992). As a member

of the Film Board, it was Appellant's job to advise the County Commission and make recommendations on all policy matters affecting the entertainment industry.[6] Appellant herself recalled several instances where the Film Board passed "resolutions" and "letters of recommendation" that were presented to the County Commission rendering advice on funding and filming issues affecting the County. She also recalled an instance where the Film Board intervened in a dispute with a local municipality over film permitting fees. Although neither Appellant or the Film Board had final authority to make binding policy decisions for the County, the fact that Appellant's duties required her to serve in an advisory capacity with input on policy issues is a factor that we believe gives the County a greater interest in removing her based on her speech.

Next, the County Code description of Film Board members' duties, as well as Appellant's own testimony, demonstrate that her role on the Film Board involved some public contact on behalf of the County, a factor that we have held tips the Pickering balance in favor of the government as an employer. Shahar, 114 F.3d at 1104; Sims, 972 F.2d at 1237-38. Section 2-11.14.1(b) of the County Code provides in relevant part that the Film Board was to serve as a "focal point" for the

_____

[6]Specifically, § 2-11.14.1 of the County Code provides that "the purpose of the [Film Board] is to advise and make recommendations to the Board of County Commissioners on all matters pertaining to the film, print, broadcasting and related industries."

9

entertainment industries in Dade County and to provide a "point of reference" for the public for collection, input, and dissemination of information related to these industries. Appellant herself testified that the Film Board acted as a "liaison" to the film industry on behalf of the County and that it disseminated information to the public. In addition, the Film Board had the power to and apparently did hold public hearings, workshops and seminars.

Perhaps more important to our decision than Appellant's policy influence or public contact, however, is the fact that Appellant served as an appointed representative of the County and Commissioner Kaplan, and she failed to support their interests. Although not on all fours with the instant case, we find instructive the Fifth Circuit's decision in Rash-Aldridge v. Ramirez, 96 F.3d 117 (5th Cir. 1996). In that case, the court held that a city council did not violate a council member's First Amendment rights by removing her from an appointed position on a metropolitan planning board when the council member advocated adopting one proposal and the city council advocated adopting another. Id. at 119. The court noted that the council member had been appointed, not elected, to the planning board to assume one of the seats allocated to the city council. Id. Because she had been appointed to a seat allocated to the city council and failed to represent the interests of the council, the

court concluded that it was within the council's discretion to remove her from that position without violating her First Amendment rights.  Id.

The court went on to discuss the distinction between the First Amendment rights of elected officials, charged only with representing their own wishes and that of their constituency, and appointed officials who serve at the will of and on behalf of an appointing body and who are expected to represent and reflect the views of the appointing body.  Id. at 119-20.  The court suggested that where dissension between an appointee and the appointing body keeps them from speaking with one voice, the interests weigh in favor of the appointing body.  Id.

Like the plaintiff in Rash-Aldridge, Appellant was not elected to her seat on the Film Board; rather she was an appointed representative of Commissioner Kaplan and the County Commission.  Although Appellant disputes that she was either party's representative, it is clear that she occupied a seat on the Film Board allocated to the designee of Commissioner Kaplan's choice.  It is also clear that as her appointing authority, Kaplan could remove her at any time and replace her with another appointee of his choosing, subject to Commission approval.  By speaking out publicly and signing a resolution against a policy proposed by her appointing authority and adopted by a unanimous County Commission, we think it fair to say that Appellant did not represent either party's interests.  As such, we do not believe that the First

11

Amendment imposes on Kaplan or the County Commission an obligation to retain her as an advisory board appointee.

Moreover, as previously noted, Appellant was removable from her position with or without cause. We have previously suggested that the power to remove individuals from a government position with or without cause implies that those individuals should be responsive to the policy choices of the authority at whose will they serve. Dartland, 866 F.2d at 1324 (11th Cir. 1989)(fact that consumer advocate was appointed by and served at will of county manager who could fire him with or without cause implies that consumer advocate should be responsive to the policy choices of the county manager).

## IV. Conclusion

We are mindful of creating a situation where the County is able to remove any public employee for disagreeing with its policy regardless of the employee's role or influence in the County government. Nevertheless, we believe we have struck the proper balance in the instant case where: Appellant was an at-will appointee to a public County advisory board; the advisory board acted as a "focal point" and "liaison" for the County, the entertainment industry and community at large; the board became involved in several matters of public interest, held public hearings, and disseminated information to the public; and Appellant spoke out publicly against a

County policy sponsored by her appointing official and unanimously approved by the County Commission at whose will she served.

Although any one of these factors may not have been sufficient alone to tip the balance in favor of the County, we believe that taken together they support our conclusion that the County Commission could remove Appellant from the Film Board without violating her First Amendment rights. As noted by the district court, it was not Appellant's right to free speech that was affected by the County Commission's decision to remove her. Rather, it was her right to maintain an appointed position as a representative of Commissioner Kaplan and the County Commission in light of her choice to publicly dissent from their clearly-stated views and policies.

AFFIRMED.