RONEY, Circuit Judge,
dissenting:
I respectfully dissent. I would affirm the district court for the reasons set forth in its Order denying the preliminary injunction. Because that Order was not published, I attach it here as Appendix I. As to whether the Ordinance is content-neutral, I note the district court’s statement that “Plaintiffs, however, do not assert that the protest ordinance [‘Any expression of support for, or protest of, any person, issue, political or other cause or action which is manifested by the physical presence of persons, or the display of signs, posters, banners, and the like’] discriminates based upon the viewpoint of the speaker or the subject matter of the speech.” Order Denying Preliminary Injunction, at 10 (corresponding text of Augusta-Richmond County Code § 3^-l(e) added).
I call special attention to the purpose of the Ordinance and the legislative intent, by which it should be interpreted, by quoting Augusta-Richmond County Code § 3-4-11(d):
(d) Intent. It is the specific intent of the Commission in passing this ordinance to regulate only the time, place and manner of such events and not to regulate the specific content or message of any speech by any applicant hereunder. Only public safety and other concerns as stated herein shall be considered by the Sheriff in the decision to issue or deny a permit hereunder.
I also note that the Ordinance requires that, upon an appeal of the denial of an application for permit in whole or in part, the Sheriff must instigate legal proceedings in a court of competent jurisdiction, and “Augusta shall have the burden of demonstrating the validity of the denial of the permit as applied for by the applicant.” § 3-4-ll(c). Stated differently, the Sheriffs denial of an application for permit is “enforceable upon review,” which has been one factor considered by the Supreme Court in similar constitutional challenges. See Thomas v. Chicago Park Dist., 534 U.S. 316, 324, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002).
This Ordinance was modeled after the ordinance that was unanimously upheld by the Supreme Court in Thomas v. Chicago Park District. 534 U.S. at 326, 122 S.Ct. 775. Here, the challenged Ordinance quotes the Thomas ordinance nearly verbatim for six of the eleven factors for the official’s consideration of the permit application. Compare 534 U.S. at 318 n. 1, 122 S.Ct. 775, quoting Chicago Park DistCode, ch. VII, § C.5.e(l to 11) with Augusta-Richmond County Code § 3-4-ll(b)(3)(a to i). It also encompasses a seventh Thomas factor by requiring an application fee and indemnification agreement in a different provision of the Ordinance. Compare 534 U.S. at 318 n. 1, 122 S.Ct. 775, listing § C.5.e(2) with § 3-4-ll(a)(3). In fact, the challenged Ordinance here adds two other tailored factors relating to an “unreasonable disturbance” of the peace and an “unduly restriction” of traffic in the requested permitted area. See § 3-4 — 11 (b)(3)(f), (g). The remaining four Thomas ordinance grounds not quoted or in some way embodied in the Ordinance challenged here relate to double-booking a public park for an event and the sale of goods in a park, factors that are simply not relevant here. See 534 U.S. at 318 n. 1, 122 S.Ct. 775 (listing § C.5.e(6), (7), (8), *1261 (10)). The factors that must be considered by the Sheriff are far from “vague, undefined and completely subjective,” as is argued, and are firmly cut from the same pattern of the unanimously upheld Thomas ordinance.
For example, the challenged ordinance in Thomas required a finding that the intended use or activity “ ‘would present an unreasonable danger to the health or safety of the applicant, or other users of the park...534 U.S. at 318 n. 1, 122 S.Ct. 775 (quoting § C.5.e(9)) (emphasis supplied). Section 3-4-ll(b)(3)(e) of the Augusta-Richmond Ordinance states that the proposed plan submitted by the applicant may be denied by the Sheriff if the applicant “would present an unreasonable danger to the health or safety of the applicant, others participating in the event or other members of the public at large,” (emphasis supplied). In order for governmental bodies to provide adequate police protection, traffic control, and further public safety considerations to “others participating in the event or other members of the public at large,” it is essential that governmental bodies have advance notice of protests and demonstrations and information concerning size, location, and manner of protests such that it can effectively make proper logistical arrangements. In my judgment, the plaintiffs have not satisfactorily distinguished the application of the principles therein set forth from their application to the Ordinance here.
As to the minimum number of people that requires such a permit as approved by Thomas, the decisions of local legislative bodies as to what constitutes a threshold number to require a permit intended to protect the safety of a community’s citizens should not be arbitrarily rejected. Each community is different as to the configuration of streets, sidewalks, public parks, traffic flow and other relevant considerations which are not apparent in a facial challenge to an ordinance. The plaintiff does not here make an “as applied” challenge to the Ordinance.
I would therefore affirm the district court’s denial of the plaintiffs’ request for preliminary injunctive relief.
APPENDIX I
BOWEN, Chief District Judge.
Plaintiffs move to enjoin the enforcement of § 3-4-11 of the Augusta-Richmond County Code. (Doc. No. 3.) For the reasons stated below, Plaintiffs’ motion is DENIED.
I. The Ordinance
On February 18, 2003, the Augusta-Richmond County Commission (“the Commission”) enacted an ordinance whereby a protest or demonstration consisting of five or more persons cannot be held on any 'sidewalk, street, public right-of-way, or other public property without a permit. See Augusta-Richmond County Code § 3-4-11 (“the ordinance”). According to the ordinance, the Commission sought only to regulate the time, place, and manner of these gatherings. Id. § 3 — 4—11(d).
It is fair to say the ordinance was passed in anticipation of the potential for protests during the forthcoming Masters Golf Tournament, held annually at the Augusta National Golf Club (“Augusta National”). It is also fair to say the ordinance was modeled after and draws heavily upon the model of the Chicago Park District ordinance which passed constitutional muster in Thomas v. Chicago Park District, 534 U.S. 316, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002).
Persons seeking to hold a protest or demonstration must apply to the Sheriff of Richmond County for a permit at least twenty days prior to the commencement of the event. The application must contain *1262 the following information: 1) the name and address of the applicant; 2) an estimate of the number of participants; 3) the date and duration of the proposed event; 4) the location of the proposed event; 5) any equipment used to disseminate the message; and 6) “provisions that will insure the safety” of the applicant and other participants. Id. § 3-4-ll(a)(l)-(2). In addition to filing an application, an applicant must provide an indemnification and hold-harmless agreement in favor of Defendants. Id. § 3 — 4—11(a)(3). That form of agreement must be approved by the city attorney. Id.
The Sheriff must render a decision on the application within seven days of its filing. Id. § 3 — 4—11(b)(2). The ordinance lists several factors the Sheriff may consider when making a determination on a permit request. Id. § 3 — 4—11(b)(1). Such factors include, but are not limited to, the event’s scheduled time, its proposed location, and the possible traffic congestion caused by the event. Id. The Sheriff may also consider “other matters as may be important to assure the safety of the applicant and others ....” Id..
The ordinance grants the Sheriff the authority to deny the application in whole or in part for several reasons. The Sheriff many deny a permit if the protest raises public safety concerns. Id. § 3 — 4—11(b)(3). In addition to this over-arching consideration, the ordinance contains other factors that could also justify a denial: 1) an incomplete application; 2) the application contains misrepresentations; 3) the applicant is legally incompetent to contract; 4) the applicant has previously damaged public property and has not paid for the damage; 5) the planned event poses an unreasonable danger to the health or safety of the applicant, participants, or members of the public; 6) the event would unduly restrict or congest traffic; 7) the event would disturb the peace; 8) the planned activities would break the law; or 9) the 'applicant has previously violated this ordinance or its predecessor ordinance. Id. § 3 — d—11 (b)(3)(a) — (j). Failure to render a decision on the application waives the approval requirement. Id. § 3-4-ll(b)(2).
An applicant has five days to file an appeal of a partial or total denial. Id. § 3-4-ll(c). After the appeal is filed with the Sheriff, he must notify the city attorney who shall seek judicial review of the denial within seven days. Id. An applicant may seek judicial review at any time after the denial. Id.
Even if an application is granted, the Sheriff or his deputies have the authority under the ordinance to terminate the protest or demonstration at any time if “traffic, weather, or other conditions” present an “imminent and undue danger” to the applicant, participants, or members of the public. Id. § 3-4-ll(e).
II. Legal Standard
Initially, Plaintiffs moved this Court to issue a temporary restraining order under Federal Rule of Civil Procedure 65(b). (Doc. No. 3.) However,- because Defendants were provided notice of the motion and were present at the hearing, Plaintiffs’ motion will be treated as a motion for preliminary injunction. See Four Seasons Hotels And Resorts, B.V. v. Consorcio, 320 F.3d 1205, 1210 n. 3 (11th Cir.2003) (“The district court may convert a hearing for a temporary restraining order into a hearing for a preliminary injunction as long as the adverse party had notice of the hearing.”)
A district court may grant a preliminary injunction only upon the movant’s showing that 1) it has a substantial likelihood of success on the merits; 2) the movant will suffer irreparable injury unless the injunction is issued; 3) the threatened injury to the movant outweighs the possible injury' *1263 that the injunction may cause the opposing party; and 4) if issued, the injunction would not disserve the public interest. Siegel v. Lepore, 234 F.3d 1163, 1176 (11th Cir.2000). “A preliminary injunction is an extraordinary remedy not to be granted unless the movant clearly establishes the ‘burden of persuasion’ as to each of the four prerequisites.” Id. Because I find that Plaintiffs have not established a substantial likelihood of success on the merits, it is unnecessary to announce my findings and conclusions as to- whether- Plaintiffs satisfied the last three prerequisites.
III. Analysis
The First Amendment provides that “Congress shall make no law ... abridging the freedom of speech ....”■ U'.S. Const, amend. I. The Fourteenth Amendment imposes the same limitations on state and local governments. Wallace v. Jaffree, 472 U.S. 38, 49, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985) (Fourteenth Amendment “imposed the same substantive limitations on the States’ power to legislate that the First Amendment had always imposed on the Congress’ power”); see also McKinley v. Kaplan, 262 F.3d 1146, 1147 n. 1 (11th Cir.2001).
Plaintiffs assert that the First Amendment protects their right to protest in the specific area of their choosing. Defendants have an interest in protecting the protest participants, ensuring the safety of bystanders, maintaining an orderly flow of pedestrian and vehicular traffic, and preventing disruptive confrontations. Because of the peculiarities of the event and the planned protests, the interests of the parties are irreconcilable in this case. Further, it is noted that “civil liberties, as guaranteed by the Constitution, imply the existence of an organized society maintaining public order without which liberty itself would be lost .... ” Cox v. State of New Hampshire, 312 U.S. 569, 574, 61 S.Ct. 762, 85 L.Ed. 1049 (1941). Against this legal backdrop, I will consider the protest ordinance.

A. Facial Challenge

Plaintiffs contend that the ordinance, on its face, is an invalid content-based prior restraint, as opposed to a content-neutral time, place, and manner restriction. More specifically, Plaintiffs assert that the ordinance is content based because it applies only to protests and demonstrations. Additionally, Plaintiffs maintain that the Sheriff has overly broad discretion to grant or deny permits. Lastly, Plaintiffs contend that the indemnification provision places unfettered discretion in the city attorney and is overly broad because protesters could be liable for damage caused by individuals not associated with the protest. Defendants counter that the ordinance is content neutral and is not imper-missibly broad.
Because Plaintiffs contend that the ordinance delegates overly broad discretion to the Sheriff, Plaintiffs can properly assert a facial challenge to the ordinance. See Horton v. City of St. Augustine, Fla., 272 F.3d 1318, 1331 (11th Cir.2001) (facial challenge is appropriate “where every application creates an impermissible risk of suppression of ideas, such as an ordinance that delegates overly broad discretion to the decisionmaker -”); City of Lakewood v. Plain Dealer Publ’g Co., 486 U.S. 750, 755-56, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) (“When a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license.”).

*1264
1. The Ordinance is a Prior Restraint

The ordinance states that the Commission only sought to regulate the time, place, and manner of protests and demonstrations. Typical time, place, and manner regulations restrict speech based on specific times of the day, proposed locations, or the methods and equipment used to disseminate a message. See Nationalist Movement v. City of Cumming, Ga., 92 F.3d 1135, 1137 (11th Cir.1996) (ordinance banned parades on Saturday mornings); Horton v. City of St. Augustine, Fla., 272 F.3d 1318, 1321 (11th Cir.2001) (ordinance prohibited street performances from occurring in four-block area on particular street); Wise Enters., Inc. v. Unified Gov’t of Athens-Clarke County, Ga., 217 F.3d 1360, 1365 (11th Cir.2000) (ordinance prohibited sale of alcohol at nude-dancing establishment). Unlike the typical time, place, and manner restriction, the protest ordinance does not restrict speech to certain times of the day, specific locations, or dictate the methods or equipment that may be used to disseminate a message. Instead, the ordinance suggests that the Sheriff may consider those factors-, among others, when deciding whether to grant or deny a permit.
Merely considering the proposed time, place, and manner of a protest or demonstration, does not convert this ordinance into a valid time, place, and manner restriction. Instead, the ordinance undoubtedly constitutes a prior restraint on expression because the Sheriff must approve the fact of, if not the message of, the protest or demonstration before it occurs. See United States v. Frandsen, 212 F.3d 1231, 1236-37 (11th Cir.2000) (“A prior restraint on expression exists when the government can deny access to a forum before the expression occurs”) As such, there is a strong presumption against its constitutionality. Id. at 1237; see also FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 225, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (O’Connor, J.) (plurality opinion).
■ Although a prior restraint is presumptively invalid, that presumption can be overcome if the ordinance contains certain safeguards. The type of safeguards necessary to. validate the prior restraint depends upon whether the ordinance limits speech based on its content. See Thomas v. Chicago Park Dist., 534 U.S. 316, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002) (content-neutral prior restraints do not have to contain the procedural safeguards set forth in Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965)). Accordingly, it is necessary to determine whether the prior restraint imposed -by the ordinance is content based or content neutral.

2. The Ordinance is Content Neutral

“The principal inquiry in determining content neutrality ... is whether the government has adopted a regulation of speech because of disagreement with the message it conveys.” Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). There are two forms of content-based discrimination: 1) viewpoint discrimination; and 2) subject-matter discrimination. See Rosenberger v. Rector and Visitors of Univ. of Va., 515 U.S. 819, 115 S.Ct. 2510, 2516, 132 L.Ed.2d 700 (1995) (“The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction”); Police Dep’t of City of Chicago v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972) (unconstitutional restriction allowed picketing on subject of labor-management dispute, but picketing on other subjects was not permitted).
Plaintiffs assert that the ordinance restricts speech based on its content because *1265 it applies only to demonstrations and protests. Plaintiffs, however, do not assert that the protest ordinance discriminates based upon the viewpoint of the speaker or the subject matter of the speech. Instead, Plaintiffs contend that the restriction on certain forms of speech constitutes content discrimination because the Sheriff has to consider the message of the speaker to determine whether the ordinance even applies to the speech.
For two reasons, the Plaintiffs’ reasoning is impersuasive. First, the ordinance does not discriminate against a particular viewpoint or limit speech to certain subject matters. Instead, it prohibits all protests and demonstrations without prior approval. See Hill v. Colorado, 530 U.S. 703, 120 S.Ct. 2480, 2492 n. 30, 147 L.Ed.2d 597 (2000) (citing several decisions where Court upheld a general ban on picketing and demonstrations); see also Horton v. City of St. Augustine, Fla., 272 F.3d 1318 (11th Cir.2000) (complete ban on street performances did not discriminate based on viewpoint or opinion of street performer).
In addition, the protest ordinance merely requires the Sheriff to perform a cursory evaluation of the message a protester seeks to convey. In Hill v. Colorado, the Supreme Court considered the constitutionality of a Colorado statute making it unlawful to approach another person without that person’s consent “for the purpose of ... engaging in oral protest, education, or counseling with such other person.” Id. at 2481. In that case petitioners argued that the Colorado statute was content based because the content of the speech had to be examined to determine whether it constituted oral protest, counseling, or education. Id. at 2485. Unpersuaded by petitioners’ argument, the Court upheld the statute ruling that a brief evaluation of speech is not constitutionally problematic. Hill v. Colorado, 120 S.Ct. at 2492 (“We have never held, or suggested, that it is improper to look at the content of an oral or written statement in order to determine whether a rule of law applies to a course of conduct.”). Accordingly, the Sheriffs duty to make a cursory examination of the protesters’ message does not render the ordinance content based.

3. Unbridled Discretion

Restricting speech by precluding discussion outright on certain viewpoints or subject matters is not the only method by which a government can discriminate against speech based on its content. Such discrimination can occur if the government official making the determinations on whether to grant or deny permits is afforded unfettered discretion. Forsyth County, Ga. v. The Nationalist Movement, 505 U.S. 123, 131, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992). Accordingly, if an ordinance that constitutes a prior restraint bestows broad discretion on a licensing official to determine whether to grant or deny a permit, the ordinance must then contain adequate standards to guide the official’s decision. See Thomas, 122 S.Ct. at 780-81. Such guidelines must be narrow, objective, and definite. See Shuttlesworth v. Birmingham, 394 U.S. 147, 150-51, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); Central Fla. Nuclear Freeze Campaign v. Walsh, 774 F.2d 1515, 1525 (11th Cir.1985).
Plaintiffs assert that several of the considerations contained in the ordinance are not sufficiently narrow, objective, or definite to constrain the Sheriffs discretion.[1] *1266 However, nearly every standard contained in the protest ordinance upon which the Sheriff can base a denial of a permit has been ruled sufficiently specific and objective by the Supreme Court. See Thomas v. Chicago Park Dist., 534 U.S. 316, 122 S.Ct. 775, 780, 151 L.Ed.2d 783 (2002). In Thomas, the Supreme Court upheld the following factors contained in the protest ordinance at issue: 1) the application was incomplete, (b)(3)(a); 2) the application contains material falsehoods or misrepresentations, (b)(3)(b); 3) the applicant is legally incompetent to contract or to sue and be sued (b)(3)(c); 4) the applicant has failed to pay damage caused to public property or has outstanding fines, (b)(3)(d); 5) the event poses an unreasonable danger to health or safety of applicant, participants, and members of public, (b)(3)(e). See id. at 324, 122 S.Ct. 775.
As for the remaining standards that Plaintiffs contend do not sufficiently constrain the Sheriffs discretion, it would be imprudent to find those considerations insufficient at this juncture. “[Pjerfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.” See Ward, 491 U.S. at 794, 109 S.Ct. 2746. Instead, it is more reasonable to deal with a pattern of unlawful content discrimination or favoritism if it occurs. See Thomas, 122 S.Ct. at 781. This Court declines to insist upon a degree of rigidity in the protest ordinance found in “few legal arrangements.” Id.
A Indemnification Provision
The protest ordinance contains a provision calling for an applicant to execute an indemnification and hold-harmless agreement in favor of Defendants in a form satisfactory to the city attorney. Augusta-Riehmond County Code § 3 — 4—11(a)(3). Plaintiffs contend that the sample agreement handed to applicants is not narrowly tailored because it broadly requires an applicant to indemnify Defendants against all losses regardless of who causes the damage. Alternatively, Plaintiffs contend the provision grants unfettered discretion to the city attorney. Defendants counter that the ordinance does not in practice require the submission of an indemnification agreement as broad as the sample agreement. Additionally, the Sheriff has provided corroborated testimony that he has never denied a permit due to the failure of the applicant to provide an indemnification agreement. (Doc. No. 11.) It is uncontroverted that five of the eight applicants, including Plaintiffs, either failed to submit an indemnification agreement or modified the sample agreement. (Defendants’ Exs. 1-12, April 2 Hearing.)
In evaluating a facial challenge, the Court must consider the “county’s authoritative constructions of the ordinance, including its own implementation and interpretation of it.” Forsyth County, 505 U.S. at 131, 112 S.Ct. 2395. Because it is clear that the Sheriff has never denied a permit due to the form or the absence of an indemnification agreement, I cannot construe the provision to be facially invalid. Moreover, the Court is unwilling to simply presume, without evidence to the contrary, that the , city attorney would approve or disapprove of an indemnification agreement because of the message of any protest or demonstration. See NLRB v. Bibb Mfg. Co., 188 F.2d 825, 827 (5th Cir.1951)[2] *1267 (“Duly appointed public officers, such as members of the police department of a municipality, are presumed to discharge their duties impartially according to the law, and this presumption must be overcome by clear and convincing evidence to the contrary”); Dudley v. United States, 320 F.Supp. 456, 458 (N.D.Ga.1970) (“[T]here is a strong presumption of the correctness and legality of acts done in the discharge of official duties unless and until the contrary is made to appear.”)
Finally, it is noted that the language employed by the Supreme Court in its only mention of the indemnification provision of the Chicago Park District ordinance was not so strict as Plaintiffs’ argument would require. The unanimous Court observed that one of the objects of the Chicago Park ordinance was to “assure financial accountability for damage caused by the event.” Thomas, 122 S.Ct. at 780 (emphasis added). Accordingly, even if the Sheriff had not so liberally construed the indemnification provision to applicants, the protest ordinance might still pass constitutional muster in the winnowing process of this Court’s further consideration of the matter.

5. Strict Scrutiny

Generally, prior restraints are subject to strict scrutiny. Moreover, ordinances which seek to restrict speech occurring on public streets — a quintessential public forum — are subject to strict scrutiny. Accordingly, this Court will analyze whether the protest ordinance is sufficiently narrowly tailored to achieve a compelling government interest.
The ordinance, on its face, demonstrates that providing for the safety of the protesters and on-lookers was the primary concern of the Commission. It is axiomatic that a government has a compelling interest in providing for the safety of its citizens. Central Fla. Nuclear Freeze Campaign v. Walsh, 774 F.2d 1515, 1528 (11th Cir.1985) (concurring opinion); Grider v. Abramson, 180 F.3d 739, 749 (6th Cir.1999) (citing public safety and order as compelling interests). The more difficult question is whether the ordinance is narrowly drawn.
An ordinance is narrowly tailored to achieve its goals if “the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.” Ward v. Rock Against Racism, 491 U.S. 781, 799-800, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (internal quotation marks omitted) (citation omitted). Furthermore, “[s]o long as the means chosen are not substantially broader than necessary to achieve the government’s interest, ... the regulation will not be invalid simply because a court concludes that the government’s interest could be adequately served by some less-speech-restrictive alternative.” Id. at 800, 109 S.Ct. 2746.
Defendants’ interest in ensuring the safety of the protesters and on-lookers is furthered by the protest ordinance. Absent the ordinance, this interest would be achieved less effectively because a protest or demonstration could spontaneously occur on any public road without law enforcement having the opportunity to take crowd control measures or direct traffic. Additionally, the ordinance does not allow for means of achieving the government’s goals that are substantially broader than necessary.
IV. Conclusion
Because of the exigencies of time, I will enter the Court’s decision in two parts. *1268 Upon the foregoing, IT IS ORDERED that Plaintiffs’ motion to enjoin § 3-4-11 of the Augusta-Richmond County Code is DENIED as to their facial challenge. An Order with respect to the as-applied challenge to the ordinance will follow.

. More specifically, Plaintiffs point to four allegedly vague, indefinite standards. First, subsection (b)(1) lists factors that the Sheriff “may” consider and contains a catch-all provision allowing the Sheriff to consider "such other matters as may be important to assure the safety” of the applicant, participants, and on-lookers. Another alleged defect is the over-arching public safety factor found in subsection (b)(3). Additionally, Plaintiffs contend that the specific enumerated factors in (b)(3) *1266 are flawed because a denial of a permit could be based upon: 1) the possibility that the event would present an "unreasonable danger"; and 2) the possibility that the event would lead to an "unreasonable disturbance of the peace.” Lastly, § 3-4-11(e) allows the Sheriff to halt any protest or demonstration that had been approved for the same reasons Plaintiffs contend are vague.

. The Eleventh Circuit, in the en banc decision Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as prece *1267 dent decisions of the former Fifth Circuit rendered prior to October 1, 1981.