[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-10261

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 17, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 97-01915-CV-JLK

MICHAEL PEREZ,

                                                    Plaintiff-Appellant,

versus

MIAMI-DADE COUNTY,
WILLIAM ALLSBURY,

                                                    Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(February 17, 2006)**

Before BARKETT and WILSON, Circuit Judges, and CONWAY*, District Judge.
_____

    *Honorable Anne C. Conway, United States District Judge for the Middle District of Florida, sitting by designation.

PER CURIAM:

Michael Perez appeals the district court's grant of defendant Miami-Dade County's motion for summary judgment as to his claims under 42 U.S.C. §§ 1983, 1985, and 1986, as well as the district court's denial of several discovery motions.

## I. FACTS

Michael Perez and his partner were working as undercover detectives for the Miami-Dade Police Department ("MDPD") on March 24, 1995, when they responded to their police radio broadcast stating that fellow police officers were in pursuit of several African-American males who had just robbed a RadioShack. They sped to the scene of the robbery in their patrol car and joined in the chase of the suspects. When the suspects abandoned their vehicle, Perez and his partner continued the chase on foot.

At the same time, another MDPD officer, Sergeant William Allsbury, was approaching the area from a different direction and heard the same radio report broadcast over his police car radio.[1] While speeding to the scene, Allsbury saw Perez and his partner running along the street away from the RadioShack where the robbery had allegedly occurred. Allsbury assumed that Perez and his partner were the fleeing suspects. Allsbury hit Perez with his police car. Perez contends that

---

[1]Allsbury's name is at times spelled "Alsbury." For the sake of consistency, we adopt the spelling of his name as it appears in the caption and refer to him as "Allsbury."

Allsbury "intentionally aimed his vehicle directly at the person he believed to be the subjects, gunned the engine, and struck [him]," causing Perez serious injuries. Allsbury testified that the entire incident was an accident. He claimed that he drove past Perez and his partner, made a U-turn into the yard where they were running, but because the grass was wet, he lost control of the car and slid into Perez. After hitting Perez and realizing he was a fellow officer, Allsbury said, "I am sorry. I thought you were one of the subjects."

Perez, who is Hispanic, claims that Allsbury intentionally hit him because Allsbury was a racist and mistakenly believed Perez was an African-American.[2] He further contends that Allsbury's racist views were known to Miami-Dade County ("the County"). Perez also argues that the County knew Allsbury had a history of condoning the use of excessive force against suspects and that the County should have removed Allsbury from the force, based on several incidents which include Allsbury's previous use of a vehicle to apprehend a suspect and Allsbury's statements to another officer that he used his vehicle to apprehend suspects.

Subsequent to the incident in which Allsbury struck Perez, Perez claims that

_____

[2]Allsbury admitted that he made racist statements and that he considered himself a separationist, which by his terms meant that he had the right not to eat with, work with, or live with African-Americans. Allsbury is now deceased.

3

the County engaged in a series of cover-ups and subjected him to retaliation and harassment, which was representative of the County's systemic failure to appropriately discipline officers who used excessive force and was part of a policy, known to the County's highest officials, of protecting offending officers by enforcing a code of silence.

## II. DISCUSSION

## 1. SECTION 1983 CLAIMS

We review the district court's order granting summary judgment de novo. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001). "Summary judgment is appropriate if the evidence establishes no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (per curiam) (internal quotations omitted). We "resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his or her favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (internal marks and quotations omitted).

The plaintiff in a § 1983 civil rights action must show a deprivation of a "federal right by a person acting under color of state law." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). Section 1983 applies to

4

municipalities and other local government entities, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978), but such entities may only be liable under § 1983 for injuries caused by a policy or custom. *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). A custom is a practice that is so settled and permanent that it takes on the force of law. *Monell*, 436 U.S. at 690-91, 98 S.Ct. at 2036. The custom must be "the moving force behind the constitutional violation." *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc) (internal marks omitted).

Here, the evidence is sufficient to establish genuine issues of material fact with respect to Perez's excessive force and First Amendment claims under § 1983. In support of his claim that the County had a custom of excessive force based on failure to investigate and discipline, Perez alleges the following. Allsbury was involved in numerous automobile collisions. Allsbury was also known to use racially derogatory terms, which served as the basis for a County rules and regulations disciplinary violation. During a ten-year time frame, the County

5

disciplined only 16 officers for use of excessive force, six of whom received written reprimands and ten of whom were suspended for periods of time ranging from one to ten days. Perez offers the sworn statements of individual officers who testified that it was "understood" there would be no punishment for the use of excessive force, as well as the sworn statements of individual complainants. Perez has also alleged incidents of cover-up, including the cover-up of the subject incident wherein officers allegedly moved Allsbury's police car and concealed evidence. He also says that the "County's corporate representative" admitted a "systemic practice of covering up incidents of excessive force." Further, the County never disciplined Allsbury after hitting Perez but instead gave him an award for "professionalism," and after Allsbury retired, the County stated that it "would re-hire" him. Perez also claims that other officers were aware of Allsbury's practice of apprehending suspects by hitting them with his car and his statements to other members of his squad that it was acceptable to hit suspects in order to apprehend them. He states that the Mayor warned the County Commission of the "grave Countywide problem" of excessive force, and the former chairman of the Independent Review Panel recommended that the County needed a civilian oversight board with the power to subpoena police officer witnesses and documents, which the County did not implement. Additionally,

Perez claims that evidence of numerous excessive force settlements established the County's notice. Finally, Perez cites the County's failure to prepare use-of-force reports in numerous incidents, including the instant case. This evidence is sufficient to raise a genuine issue of material fact as to whether the County had a custom of using excessive force, and therefore, summary judgment was not appropriate on this claim.

Perez also raises a § 1983 claim based on the County's alleged violations of his First Amendment rights. "To state a claim for retaliation in violation of the First Amendment, a public employee must show that [his] employer retaliated against [him] because of [his] speech on a matter of public concern." *Stavropoulos v. Firestone*, 361 F.3d 610, 618 (11th Cir. 2004). Retaliation occurs when a public employer "takes an adverse employment action that is likely to chill the exercise of constitutionally protected speech." *Id*. Here, the County has admitted that it took away Perez's disability leave time pursuant to an official policy. This action constitutes an adverse employment action for purposes of Perez's First Amendment retaliation claim under § 1983. *See id*. at 619 (defining "adverse employment action" as one that involves "an important condition of employment").

Having determined that there was an adverse employment action, we now

turn to whether the County retaliated against Perez based on his protected speech. In making this determination, we use a four-part test derived from *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968). First, we ask whether the employee's speech is a matter of public concern. *McKinley v. Kaplan*, 262 F.3d 1146, 1149 (11th Cir. 2001). "If so, we weigh the employee's First Amendment interest against the government's interest in promoting the efficiency of the public services it performs through its employees." *Id.* If the employee prevails on the balancing test, we next ask "whether the speech played a substantial part in the [adverse employment action]." *Id.* at 1150. "[I]f the speech was a substantial motivating factor in the decision, we decide whether the government has shown by a preponderance of the evidence that it would have [taken the adverse employment action] regardless of the protected conduct." *Id.* "The first two steps are questions of law; the final two steps are questions of fact designed to determine whether the alleged adverse employment action was in retaliation for the protected speech." *Cook v. Gwinnett County Sch. Dist.*, 414 F.3d 1313, 1318 (11th Cir. 2005) (internal quotations omitted).

In this case, the first prong is satisfied because Perez's speech constituted a matter of public concern. *See, e.g., Cooper v. Smith*, 89 F.3d 761, 765 (11th Cir. 1996) ("There can be no doubt that corruption in a police department is an issue of

8

public concern."); *Fikes v. City of Daphne*, 79 F.3d 1079, 1084 (11th Cir. 1996) ("[T]he question of whether police officers are properly performing their duties . . . must be considered an issue of political or social concern.").

Because Perez's speech was protected speech, we must apply the second part of the *Pickering* analysis and "weigh the employee's First Amendment interests against the interest of the [County], as an employer, in promoting the efficiency of the public services it performs through its employees." *Id*. (internal marks, quotations, and citation omitted). In doing so, we consider any impediment the speech caused to the government's ability to perform its duties effectively; the manner, time, and place of the speech; and the context within which the speech was made. *Id*. Here, there is nothing to indicate that Perez's speech disrupted the County's ability to function, nor is there anything to suggest that the "time, place, and manner" or "context" of the speech was inappropriate. Therefore, the County's interest in efficient operation is insufficient to overcome Perez's interest in revealing possible police misconduct.

We must also determine whether the speech at issue played a substantial part in the adverse employment action. Perez's allegations are sufficient to raise such an inference. He claims that when he complained about the incident involving Allsbury and the alleged cover-up of that incident, he was told that his "career

9

would be over." Perez claims that the County tapped his phone, listening in on private conversations. He also alleges, and the County admits, that it took away his disability leave time because he "brought litigation" against the County. Therefore, Perez has created an issue of material fact as to whether his speech played a substantial part in the County's actions against him. Whether, under the fourth part of the *Pickering* analysis, the County can show by a preponderance of the evidence that it would have reached the same decision in the absence of Perez's protected conduct is likewise a question of fact for the jury. *See Fikes*, 79 F.3d at 1085. Therefore, we reverse summary judgment as to Perez's § 1983 claim based on the First Amendment.[3]

## 2. DISCOVERY RULINGS

Finally, Perez claims that the district court erred in denying several motions to compel discovery, including (1) a motion to compel production of various documents regarding personnel files, professional compliance files, and risk management files of various officers who were alleged to use excessive force; (2) a motion to compel production of a County memorandum admitting that the MDPD wanted to "get rid of" Perez; (3) a motion to compel production of documents regarding the County Commissioner's failure to create a Civilian Investigative

---

[3]The district court also granted summary judgment in favor of the County as to Perez's claims under §§ 1985 and 1986. We affirm for the reasons stated by the district court.

10

Panel with subpoena power; (4) a motion to compel production of documents regarding the investigation of use of excessive force that was the subject of a renewed motion to compel; and (5) Perez's motion to allow him to depose the County's police expert.

We review the denial of discovery motions for abuse of discretion. *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1286 (11th Cir. 2003). "Where a significant amount of discovery has been obtained, and it appears that further discovery would not be helpful in resolving the issues, a request for further discovery is properly denied." *Id*. (internal quotations omitted). Further, discovery rulings should not be overturned "unless it is shown that [they] resulted in substantial harm to the appellant's case." *Id*. (internal quotations omitted).

In this case, considering the scope of discovery requests previously granted by the district court, and given the fact that Perez has not shown that his case was substantially harmed by the denials of the discovery motions at issue, the court did not abuse its discretion in denying any of the discovery motions. We therefore affirm the district court's denial of these motions.

### III. CONCLUSION

Upon consideration of the parties' briefs, arguments, and the record, we vacate the district court's grant of summary judgment in favor of the County as to

11

Perez's § 1983 claims and remand for further proceedings consistent with this opinion. We affirm the district court's grant of summary judgment as to Perez's claims under §§ 1985 and 1986, as well as the district court's rulings on Perez's discovery motions.

**VACATED AND REMANDED IN PART; AFFIRMED IN PART.**