**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 95-40630
(Summary Calendar)

ARLENE RASH-ALDRIDGE,

Plaintiff-Appellant,

versus

SAUL RAMIREZ, ET AL.,

Defendants-Appellees.

Appeal from United States District Court
for the Southern District of Texas
USDC No. L-93-CV-54

July 11, 1996
Before JOLLY, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

Appellant Arlene Rash-Aldridge comes now appealing the district court's final judgment

denying her requests for declaratory and injunctive relief and damages. Following review of the

parties' submissions we hereby affirm the judgment of the district court for the following reasons.

BACKGROUND

This case has to do with Rash-Aldridge's failure as the appointed representative of the

Laredo, Texas, city council, to abide by the council's wishes during her term on a metropolitan

---

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

planning board. In May 1990, Rash-Aldridge was a member of the Laredo city council. The council appointed her to sit on the local Metropolitan Planning Organization ("MPO") known as the Laredo Urban Transportation Study ("LUTS"). An MPO is federally mandated for certain urban areas seeking federal highway funding. Atlanta Coalition on the Transp. Crisis, Inc. v. Atlanta Regional Commission, 599 F.2d 1333, 1340 (5th Cir. 1979); 49 U.S.C.A. § 5303. The MPO in the Laredo urban area is the Laredo Transportation Study. The LUTS consists of both voting and non-voting members from the City of Laredo, Webb County, and the State of Texas. The custom for selecting representatives from the City of Laredo has been that the Mayor of the City of Laredo nominates council members subject to approval by the city council. By this process Rash-Aldridge was appointed a voting member on the MPO.

While Rash-Aldridge served on the LUTS, there arose an issue concerning highway access to a new international bridge crossing the Rio Grande near Laredo. Several proposals were offered. Rash-Aldridge preferred one plan, but the city council preferred another. Rash-Aldridge and other members tried to place the issue on the LUTS agenda, but could not because of opposition by the mayor, Saul Ramirez. Unable to compel the LUTS to address the highway access issue, Rash-Aldridge and four other LUTS members wrote the Texas Transportation Commission on LUTS stationery to express support for the highway access plan they preferred. The Laredo city council had already passed two resolutions favoring another proposal. Because of Rash-Aldridge's actions and failure to support the council, the city council removed her from her LUTS position.

Rash-Aldridge filed her original petition in state court on April 20, 1993, seeking a declaratory judgment, injunctive relief, and damages. She sued Mayor Ramirez, city council members, and the City of Laredo. The defendants removed the case to federal court. The court granted summary

2

judgment for the defendants in their individual capacities on qualified immunity grounds. Proceedings continued with respect to the claims against the defendants in their official capacities. Following trial, the court found for the defendants. Rash-Aldridge filed a timely notice of appeal.

DISCUSSION

Rash-Aldridge contends that her ouster from the LUTS by the Laredo city council violated her rights to freedom of expression under the Unites States and Texas Constitutions and the Laredo City Charter. We review the legal determinations of the district court de novo. Acacia Vera Nav. Co., Ltd. v. Kezia, Ltd., 78 F.3d 211, 214 (5th Cir. 1996).

Appellant argues that the defendants in this case removed her from an important policy-making body in retaliation for her exercise of protected speech activities. She signed a letter expressing her support for a project opposed by the defendants, and she made it clear that she intended to vote in accordance with her beliefs. In support of her argument, Rash-Aldridge cites a Supreme Court case, Bond v. Floyd, 385 U.S. 116, 87 S. Ct. 339, 17 L. Ed. 2d 235 (1966), holding that a state legislator could not be prevented from taking his elected seat because of statements he made that were critical of the government. Such disqualification violated the plaintiff's right of free expression under the First Amendment. Id. at 137. We find Bond inapposite in that the state legislature was attempting to censure speech by a member not charged with representing the assembly's wishes but only those of himself and his constituency. Such a prohibition impinges on the liberal discourse essential to democratic processes.

Appellant also cites Miller v. Town of Hull, Massachusetts, 878 F.2d 523 (1st Cir.), cert. denied, 493 U.S. 976, 110 S. Ct. 501, 107 L. Ed. 2d 504 (1989), in which members of a town redevelopment authority sued the town and members of its board of selectmen for using their power

3

to remove them following a disagreement between the board and the authority members over the location of public housing. A jury found for the plaintiffs and the First Circuit upheld the awards finding that the "act of voting on public issues by a member of a public agency or board comes withing the freedom of speech guarantee of the first amendment." Id. at 532. However, in the next sentence it stated that "[t]his is especially true when the agency members are elected officials." Id.

The case before us is different in that, as the trial court noted, there is no implication of the plaintiff's fundamental rights as an elected official as in Bond and Miller. Rash-Aldridge was appointed to the LUTS, not elected, to assume one of the seats allocated to the city council. Inasmuch as she failed to represent the interests of that body on the issue of which highway access proposal to support, the council was within its discretion to remove her from that position. Her capacity as an elected official was not compromised because the council did not try to remove her from her seat on the council nor take away any privileges of that office because of what she said or did.

We agree with the trial court in finding this case more analogous to the situation in Kinsey v. Salado Indep. Sch. Dist., 950 F.2d 988 (5th Cir. 1992) (en banc), in which the school board fired its school superintendent for publicly stating positions contrary to the board's policy choices for the school district. This court applied the test for discharge based on political activity whereby the "First Amendment values implicated by those activities" are balanced against "the possible disruptive effect on governmental provision of services." Coughlin v. Lee, 946 F.2d 1152, 1157 (5th Cir. 1991) (citing McBee v. Jim Hogg county, Texas, 730 F.2d 1009, 1016-17 (5th Cir. 1984) (en banc)). In Kinsey this court found no constitutional violation.

4

Although Kinsey is not "on all fours" with the present case, it is our best guide. As the trial court stated, "where the legislator is serving as an appointee, the prerogatives of office are not the same." Where the dissension between Rash-Aldridge and the Laredo city council kept them from speaking with one voice on the LUTS, the interests weighed in favor of the city council as the represented. As explained by this court in Gonzalez v. Benavides, 712 F.2d 142, 148 (5th Cir. 1983),

> There is a governmental interest in securing those unique relationships between certain high level executives and the elected officials at whose grace they serve. For this narrow band of relationships, refusing to grant First Amendment found tenure would seem to take away little freedom not already lost in accepting the appointment itself, at least when the appointive job has the sweep of authority and discretion as to be central to the elected official's duty. The holder of such a position can hardly have any reasonable expectation but that his policy choices must publicly fall within the protective license issued by his appointing officer. His selection presumably included that supposition. To say that loss of that job is the price for his public declaration chills little.

The foregoing discussion similarly applies to appellant's arguments with respect to her state law claims under the Texas Constitution and Laredo City Charter.

For the foregoing reasons we affirm the judgment of the district court.

5