**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-3646
_____

HAROLD WERKHEISER, individually and in his official
capacity as a supervisor for the Township of Pocono

v.

POCONO TOWNSHIP; FRANK HESS, Supervisor;
HENRY BENGEL, Supervisor

Frank Hess; Henry Bengel,
Appellants

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 3-13-cv-01001)
District Judge: Hon. A. Richard Caputo

_____

Argued December 8, 2014

BEFORE: VANASKIE, GREENBERG, AND COWEN,
Circuit Judges

(Opinion Filed:  March 6, 2015)

_____

OPINION
_____

Edward J. Easterly, Esq.
Steven E. Hoffman, Esq. (Argued)
Norris, McLaughlin & Marcus
1611 Pond Road
The Paragon Centre, Suite 300
Allentown, PA 18104

     Counsel for Appellants

Michael S. Fettner, Esq.
Cletus P. Lyman, Esq. (Argued)
Michael T. Sweeney, Esq.
Lyman & Ash
1612 Latimer Street
Philadelphia, PA 19103

     Counsel for Appellee

COWEN, Circuit Judge.

2

This matter requires us to decide whether elected officials are entitled to qualified immunity when they retaliate against a fellow official by denying him reappointment to a non-elected position because of comments he made in his capacity as an elected official. Because we conclude that the contours of the First Amendment right at issue were not clearly established, we hold that Appellants are entitled to qualified immunity on their federal claim.[1]

**I.**

In 2007, Harold Werkheiser was elected to serve on the three-member Board of Supervisors within Pocono Township. His six-year term began in January of 2008 and was scheduled to expire at the end of 2013. In addition to Werkheiser, the Board of Supervisors was comprised of Defendant Frank Hess, who was elected in 2009, and Defendant Henry Bengel, who was elected in 2011 (together, "Appellants"). Defendant Pocono Township (the "Township"), is a Second Class Township within the County of Monroe, Pennsylvania.

Township Supervisors are permitted to hold positions of employment with the Township, including Roadmaster. The Roadmaster, or Director of Public Works, is a Township

---

[1] In denying Appellants' motion to dismiss, the District Court allowed both Werkheiser's federal claim and state law claim to proceed. Appellants have not appealed the District Court's denial of their motion as it pertains to Werkheiser's state law claim and review of that decision is not before us.

3

employee responsible for the supervision of all the activities of the Township Road Department and the Township Parks and Recreation Department. In 2008, Werkheiser was appointed Roadmaster by the Board of Supervisors.

Hess began receiving wages in 2011 and, in 2012, assumed administrative duties previously performed by a predecessor supervisor. He received approximately $36,000 per year in salary, health insurance, and other employee benefits, and holds the titles of Chairman of the Board of Supervisors, Secretary, and Treasurer. In 2012, Hess became temporarily disabled and took leave from the Township for ten days. During his absence, Frank Froio was selected by a consultant to the Township to assume Hess's administrative duties. Froio was not appointed by the Board of Supervisors. On February 6, 2012, Bengel made a motion, seconded by Hess, to hire Froio as Township Administrator. Froio was to receive compensation of approximately $70,000 annually. Werkheiser opposed the motion, but it nonetheless carried.

As Froio's position developed, Hess's responsibilities and workload decreased. Hess, however, continued to collect approximately the same compensation. Werkheiser voiced his objection to the cost of Froio's position to the Township and to the creation of a new position with greater expense. He also objected to paying Hess when his duties were being performed by Froio, as well as to the appointment of an outside grant-writer, who would be performing work that Werkheiser asserted should be performed by Froio and Hess.

In December of 2012, Appellants decided they no longer wanted Werkheiser to serve as Roadmaster. Along

4

with several others, they began private deliberations to discuss denying Werkheiser reappointment for 2013 and to instead replace him with Bengel. In January of 2013, Werkheiser was formally denied reappointment as Roadmaster at a noticed reorganization meeting.

As a result of the decision to not reappoint him, Werkheiser commenced an action in Pennsylvania state court. Defendants removed the action to federal court, and Werkheiser subsequently filed an amended complaint. In that complaint, Werkheiser asserted a claim for First Amendment retaliation, as well as a state law claim under the Second Class Township Code and Pennsylvania Sunshine Law. As to his First Amendment retaliation claim, Werkheiser alleges that he was denied his position as Roadmaster as a result of speech he expressed in his capacity as an elected official concerning the Board of Supervisors' overpayment for administrative duties.

## II.

Appellants filed a motion to dismiss both claims, asserting, among other things, that they were entitled to qualified immunity as to Werkheiser's federal claim against them. They argued that because Werkheiser's speech concerning Township resources and payments were made in his official capacity as an elected representative of the Township, the Supreme Court's decision in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), applied. Accordingly, they asserted, Werkheiser's speech was not protected by the First Amendment, and he was unable to demonstrate the violation

5

of his constitutional rights. For his part, Werkheiser disputed the applicability of *Garcetti*, arguing that speech by elected officials should be treated differently than speech by public employees, and that, as an elected official, his speech was entitled to First Amendment protection not granted to public employees. The District Court agreed with Werkheiser, noting that there were important differences between the public employees discussed in *Garcetti* and elected officials. It therefore concluded that Werkheiser had established a constitutional violation.

Appellants also argued that they were entitled to qualified immunity because the law regarding Werkheiser's rights was not clearly established. The District Court rejected this argument as well. The District Court concluded that the Supreme Court's decision in *Bond v. Floyd*, 385 U.S. 116, 136-37 (1966), clearly established that elected officials are entitled to exercise their First Amendment rights free from retaliation. Further explaining that the Supreme Court had said nothing in *Garcetti* that overruled or altered its opinion in *Bond*, the District Court denied Appellants' motion to dismiss. The current appeal followed.

## III.

The Supreme Court has established a two-step analysis that governs whether an official is entitled to qualified

6

immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).[2] First, whether the facts alleged by the plaintiff show the violation of a constitutional right, and second, whether the right at issue was clearly established at the time of the alleged misconduct. *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010) (citing *Saucier*, 533 U.S. at 201). We may address the two *Saucier* prongs in either order, at our discretion. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Because we do not believe the right at issue here was clearly established, we begin with the second step.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [ a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (all alterations in original)). "In determining whether a right has been clearly established, the court must define the right allegedly violated at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012). The Supreme Court recently emphasized that "'[w]e do not require a case directly on point' before concluding that

---

[2] The District Court began its analysis with a discussion of Werkheiser's constitutional rights and, specifically, whether elected officials are entitled to First Amendment protection for their official speech. Because we conclude that the law was not clearly established as to the existence of such a right, we need not probe the merits of the District Court's analysis on this point.

the law is clearly established, 'but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (quoting *al-Kidd*, 131 S. Ct. at 2083).

### A. It was Not Clearly Established that an Elected Official's Speech is Entitled to First Amendment Protection

The District Court concluded that Appellants are not entitled to qualified immunity because "a reasonable official would have understood that retaliating against Werkheiser because he spoke as an elected official on issues concerning the Township would violate his constitutional rights." *Werkheiser v. Pocono Twp.*, 13-cv-1001, 2013 WL 4041856, at *14 (M.D. Pa. Aug. 8, 2013). We disagree, and conclude that Werkheiser's First Amendment rights, as an elected official, were not sufficiently defined as to warrant denying

8

Appellants qualified immunity.[3]  We pause here to emphasize that we do not today decide whether *Garcetti* is applicable to elected officials' speech or not.  Rather, we conclude *only* that the law was not clearly established on this point.

In *Garcetti*, a non-elected deputy district attorney brought a section 1983 action alleging First Amendment retaliation against the county and his supervisors.  In his capacity as deputy district attorney, he had prepared a memorandum discussing concerns he had about potential government misconduct.  Allegedly motivated by the expressions in his memorandum, the deputy district attorney was then subjected to a series of retaliatory employment actions.  In its opinion, the Supreme Court drew a distinction between a "public employee," like the attorney, and an ordinary citizen who speaks out for him or herself. *Garcetti*, 547 U.S. at 417.  In the case of public employees, restrictions

---

[3] Although not discussed by the District Court or mentioned in any party's brief before this court, Werkheiser suggested at oral argument that we apply the holdings of two First Amendment freedom of association cases, *Elrod v. Burns*, 427 U.S. 347 (1976), and *Branti v. Finkel*, 445 U.S. 507 (1980), whereby the Supreme Court explained that an individual may establish a retaliation claim based on an adverse action taken against him or her based on political association.  However, these cases are inapposite here, where Werkheiser has not advanced any freedom of association claim and instead bases his claim against Appellants entirely on his contention that they violated his First Amendment freedom of speech.

on speech are permissible because, "when a citizen enters government service, the citizen must accept certain limitations on his or her freedom." *Id.* at 418. Accordingly, the Court held that the plaintiff's memorandum was not protected speech under the First Amendment. *Id.*

Of course, "public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Id.* at 417. Thus, the Supreme Court explained, "[s]o long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Id.* at 419.

Conversely, the Court noted that restrictions on speech by public employees were less problematic than restrictions on speech by ordinary citizens. This is so, in part because, "[e]mployers have heightened interests in controlling speech made by an employee in his or her professional capacity. Official communications have official consequences, creating a need for substantive consistency and clarity. " *Id.* at 422. Indeed, some restrictions on employee speech were deemed necessary because "[s]upervisors must ensure that their employees' official communications are accurate, demonstrate sound judgment, and promote the employer's mission." *Id.* at 422-23. The court reasoned that greater restrictions on public employees' speech than on ordinary citizens are therefore permissible because such restrictions

10

"simply reflect[ ] the exercise of employer control over what the employer itself has commissioned or created." *Id*. at 422.

Many of the reasons for restrictions on employee speech appear to apply with much less force in the context of elected officials. Werkheiser's speech as an elected official is not subject to prior review or approval. To use *Garcetti's* language, his speech is neither "controlled" nor "created" in the same way that an employer controls the speech of a typical public employee. And, as the Supreme Court admonished, "[p]roper application of [its] precedents . . . leads to the conclusion that the First Amendment does not prohibit *managerial discipline* based on an employee's expressions made pursuant to official responsibilities." *Id.* at 424 (emphasis added). But of course, there is no truly comparable analog to "managerial discipline" when discussing retaliation between elected officials.

And, because elected officials to a political body represent different constituencies, there would seem to be far less concern that they speak with one voice. In fact, debate and diversity of opinion among elected officials are often touted as positives in the public sphere. *See Bond,* 385 U.S. at 136-37 ("Legislators have an obligation to take positions on controversial political questions so that their constituents can be fully informed by them . . . also, so [constituents] may be represented in governmental debates by the person they have elected to represent them.").

Moreover, as the District Court here highlighted, the notion that speech pursuant to a public employee's "official

11

duties" is afforded no protection under the First Amendment could have odd results if applied to elected officials. Relying on another district court opinion from this circuit, the court noted that "if *Garcetti* applied to elected officials, speaking on political issues would appear to be part of an elected official's 'official duties,' and therefore unprotected. But protection of such speech is the 'manifest function' of the First Amendment." *Werkheiser*, 2013 WL 4041856, at *9 (quoting *Zimmerlink v. Zapotosky*, No. 10-237, 2011 U.S. Dist. LEXIS 53186 (W.D. Pa. Apr. 11, 2011)) (citing *Bond*, 385 U.S. at 135). Of course, Appellants may well have been exercising a competing First Amendment right to make a political statement by removing Werkheiser. *See Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 545 (9th Cir. 2010) (noting that "almost all retaliatory actions can be expressive" and that, while an elected official may have the right to criticize other officials for their votes, the elected officials he is criticizing "had the corresponding right to replace [him] with someone who, in their view, represented the majority view.").

We are also sensitive to the fact that Supreme Court precedent prior to *Garcetti* suggests that Werkheiser's speech may be entitled to some degree of First Amendment protection. In *Bond v. Floyd*, the Supreme Court held that an elected official's First Amendment rights were violated when the Georgia House of Representatives refused to seat him because of statements he had made criticizing the Vietnam War. 385 U.S. at 135-136. The Court noted that the "manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views of policy" and "debate on

12

public issues should be uninhibited, robust, and wide-open." *Id.* Indeed, the Court noted that it was part of a legislator's official duties "to take positions on controversial political questions so that their constituents can be fully informed by them, and be better able to assess their qualifications for office; also so they may be represented in governmental debates by the person they have elected to represent them." *Id.* at 136-37. The Supreme Court did not deem it necessary to address or revisit *Bond* in deciding *Garcetti*.

Notwithstanding then, that the underlying rationale in *Garcetti* appears, to some extent, inapplicable to elected officials, we take seriously the Court's explicit pronouncements that the "controlling factor" in that case was that the expressions at issue "were made pursuant to [the plaintiff's] duties as a calendar deputy" and that the "significant point is that the memo was written pursuant to [the plaintiff's] official duties. Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Garcetti*, 547 U.S. at 421-22. Indeed, the Court's stated holding was simply that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* While there may be sound reasons to assert that *Garcetti* does not apply to elected officials' speech, we cannot accept the District Court's inherent conclusion that it is "beyond debate" that this was clearly established law at the time of

Werkheiser's non-appointment.  *Stanton*, 134 S. Ct. at 5 (quoting *al-Kidd*, 131 S. Ct. at 2083).[4]

---

[4] Werkheiser argues that even if *Garcetti*'s "public employee" analysis applies to elected officials, it is not applicable to him because Town Supervisors are not employees of the town.

In this regard, we note the unsettled nature of the law amongst both the circuit courts and the district courts. In *Rangra v. Brown*, 566 F.3d 515, 518 (5th Cir. 2009), a Fifth Circuit panel grappled with whether elected officials' speech

Relying on two lower state court cases, he argues that *Garcetti* does not apply to township supervisors because they are not "employees" of the town. However, Werkheiser misconstrues the law. In those cases, the courts were merely attempting to determine whether town supervisors were employees for purposes of two specific state statutes: the state Workmen's Compensation law, *Savage v. Mt. Pleasant Twp. Supervisors*, 181 A. 519, 520 (Pa. Super. Ct. 1935), and a particular provision of the Second Class Township Code authorizing premium payments, *Appeal of Auditor's Report of Muncy Creek Twp.*, 520 A.2d 1241, 1245-46 (Pa. Cmwlth. 1987). The state courts' decisions did not speak to whether town supervisors are employees in any broader sense and, in the latter case, noted that the provision at issue must not have been intended to include supervisors because it would have granted them "unfettered authority . . . to approve additional compensation for themselves." *Appeal of Auditor's Report of Muncy Creek Twp.*, 520 A.2d at 1245-46. In any event, the mere fact that, in certain contexts, state courts have declined to deem Town Supervisors employees in no way compels the conclusion that they are not public employees for purposes of First Amendment analysis. Moreover, the question is not necessarily whether elected officials are public employees, but rather whether they are sufficiently similar to public employees that *Garcetti* governs and they are not entitled to First Amendment protection.

15

is entitled to First Amendment protection in the wake of *Garcetti*, albeit outside of the retaliation context. In rejecting *Garcetti's* application to elected officials, the court concluded that "when the state acts as a sovereign rather than as an employer, its power to limit First Amendment freedoms is much more attenuated. That is because a state's interest in regulating speech as a sovereign is 'relatively subordinate . . . [as] [t]he government cannot restrict the speech of the public at large just in the name of efficiency." *Id.* at 522-23 (citing *Waters v. Churchill*, 511 U.S. 661, 675 (1994)). In holding that elected officials' speech is entitled to First Amendment protection, the court permitted the officials to challenge certain provisions of the Texas Open Meetings Act that criminalized the discussion of public matters by a quorum of public officials when outside of an open meeting. *Id.* at 522; *see also Siefert v. Alexander*, 608 F.3d 974, 981 (7th Cir. 2010) (applying strict scrutiny to certain provisions of Wisconsin Code of Judicial Conduct and engaging in a balancing test for others, but taking for granted that an elected state court judge's speech is entitled to some degree of First Amendment protection).

The continuing viability of the panel's decision in *Rangra* is, however, somewhat in doubt. Following publication of its decision, the Fifth Circuit reheard the case en banc, and, in a one sentence opinion devoid of any analysis, simply ordered the case dismissed as moot. See *Rangra v. Brown*, 584 F.3d 206, 207 (5th Cir. 2009) (en banc). Moreover, at least one circuit court has expressed skepticism that elected officials' speech is entitled to any protection whatsoever. *See Parks v. City of Horseshoe Bend*,

16

480 F.3d 837, 840 n.4 (8th Cir. 2007) (stating in a footnote without analysis that the elected official-plaintiff's speech would not be protected under the First Amendment if it was made in the course of her official duties).[5]

There is also substantial disagreement among the district courts. *Compare Hogan v. Twp. of Haddon*, No. 04-2036, 2006 WL 3490353 (D.N.J. Dec. 1, 2006), *aff'd* on other grounds, 278 F. App'x 98 (3d Cir. 2008) (concluding that defendant was entitled to qualified immunity on plaintiff's First Amendment claim because *Garcetti* applies to elected officials' speech and speech made in plaintiff's capacity as elected official was therefore not entitled to First Amendment protection); *Hartman v. Register*, No. 06-cv-33, 2007 WL 915193 (S.D. Ohio Mar. 26, 2007) (dismissing First Amendment retaliation claim on substantially same grounds); *Shields v. Charter Twp. of Comstock*, 617 F. Supp. 2d 606 (W.D. Mich. 2009) (granting defendants' motion for summary judgment on substantially same grounds), *with Zimmerlink*, No. 10-237, 2011 U.S. Dist. LEXIS 53186, at

---

[5] We note as well that we have not yet addressed *Garcetti*'s application to elected officials. We had occasion to do so, but, having affirmed the district court's decision on other grounds, expressly declined to reach the issue. *See Hogan v. Twp. of Haddon*, 278 F. App'x at 102 n.1 (noting that although the plaintiff had "argued that the District Court improperly applied the Supreme Court's precedent in *Garcetti v. Ceballos* . . . because we conclude that [plaintiff's] First Amendment rights were not violated, we need not reach her *Garcetti* arguments.").

17

*6-7, 8-11 (denying defendants' motion to dismiss because "governmental interest in regulating speech of public employees to promote efficient operations does not apply to speech of an elected official"); *Carson v. Vernon Twp.*, Civ. No. 09-6126, 2010 WL 2985849, at *14 (D.N.J. July 21, 2010) (denying motion to dismiss claim of deprivation of free speech, at least in part, because elected official's political expression on township matters was "unquestionably protected under the First Amendment.").

Although the Supreme Court has noted that qualified immunity is not the guaranteed product of disuniform views of the law, we find that the well-reasoned decisions on both sides render the law sufficiently unclear at the time of Appellants' actions so as to shield them from liability. *Safford Unified Sch. Dist. No. 1. v. Redding*, 557 U.S. 364, 378 (2009).

**B.** **It was Not Clearly Established that the Type of Retaliation at Issue Here Would Violate the First Amendment**

In addition, we hold that the law was not clearly established that the kind of retaliation Appellants engaged in against Werkheiser violated his First Amendment rights.

Werkheiser essentially asks this court to declare that a politically motivated act, undertaken by a majority of his fellow elected Board of Supervisors, pursuant to their proper authority, nonetheless violates the First Amendment if it is taken in retaliation for speech made in his capacity as an

18

elected official. As this court has indicated, however, not all retaliation violates the First Amendment. *See Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (noting that the First Amendment requires "retaliatory action *sufficient to deter a person of ordinary firmness from exercising his constitutional rights.*") (citation omitted) (emphasis added).

To be sure, *Bond*, which the District Court heavily relied on, signified that one kind of very serious retaliation by elected officials is unlawful -- the exclusion of a duly elected official from office. But we discern nothing in *Bond* that suggests the Court intended for the First Amendment to guard against every form of political backlash that might arise out of the everyday squabbles of hardball politics. *See, e.g., Camacho v. Brandon*, 317 F.3d 153, 162 (2d Cir. 2003) (concluding that a city council member's aide could not bring a First Amendment retaliation claim for his dismissal, in part, because it would "subject to litigation all manners and degrees of politically motivated, retaliatory conduct directed at public officials."); *Zilich v. Longo*, 34 F.3d 359, 363 (6th Cir. 1994) ("The First Amendment is not an instrument designed to outlaw partisan voting or petty political bickering through the adoption of legislative resolutions."). Rather, as other courts to consider the issue have concluded, the First Amendment may well prohibit retaliation against elected officials for speech pursuant to their official duties only when the retaliation interferes with their ability to adequately perform their elected duties. *See Blair*, 608 F.3d at 545 n.4 (Ninth Circuit opinion noting that retaliation is unlawful when it has the "effect, deleterious to democracy, of

nullifying a popular vote" or otherwise "deprive[s] [an elected official] of authority he enjoyed by virtue of his popular election.").

Our opinion in *Monteiro v. City of Elizabeth*, 436 F.3d 397, 404 (3d Cir. 2006), similarly offers Werkheiser little assistance. In that case, an elected member of the New Jersey City Council claimed that his First Amendment rights were violated when he was ejected from a Council meeting, allegedly for expressing a particular viewpoint. The defendants then sought to cloak themselves in the doctrine of qualified immunity. On appeal, we were asked to decide only whether, when entitlement to qualified immunity depends on a disputed issue of fact – in that case, whether the plaintiff had in fact been ejected for expressing a particular viewpoint -- it is proper to submit that question to the jury. In affirming the district court's decision to deny summary judgment and allow a jury to decide that question, we noted that "[i]t is clearly established that when a public official excludes an elected representative or a citizen from a public meeting, she must conform her conduct to the requirements of the First Amendment." *Id.* But *Monteiro*, like *Bond*, focused on an elected representative whose ability to fulfill his elected obligations was purposefully impaired when he was prevented from speaking at a Council meeting. Our opinion says nothing about elected officials' First Amendment rights when the action at issue *does not* involve any such impairment.

We also note in this regard decisions from the Fifth and Ninth circuits. In *Blair v. Bethel Sch. Dist.*, the Ninth

20

Circuit addressed whether an elected official could successfully claim retaliation under the First Amendment for speech made in his capacity as an elected official. 608 F.3d at 541. The plaintiff in *Blair* was a publicly elected member of the school board, who had also been elected by his peers to serve as vice president. In his capacity as a member of the school board, Blair served as a persistent critic of the school district superintendent. Eventually, Blair's fellow board members voted to remove him as vice president. *Id.* at 543. Blair then sued, alleging that the Board's conduct constituted impermissible retaliation against him for exercising his First Amendment rights.

The Ninth Circuit held that retaliation against an elected official is largely not actionable when it is at the hands of his peers in the political arena. *Id.* The court emphasized that Blair, like Werkheiser here, had been removed from a position "by the very people who elected him to the position in the first place." *Id.* at 544. Importantly, the Ninth Circuit noted that "despite [Blair's] removal as Board vice president, he retained the full range of rights and prerogatives that came with having been publicly elected." *Id.* Absent such a deprivation, the court refused Blair's invitation to more broadly conclude "that the First Amendment prohibits elected officials from voting against candidates whose speech or views they don't embrace. Experience and political reality convince us this argument goes too far." *Id.* at 545. Accordingly, the court concluded that the Board's action did not amount to retaliation in violation of the First Amendment. *Id.* at 546.

21

In *Rash-Aldridge v. Ramirez*, 96 F.3d 117 (5th Cir. 1996), the plaintiff was an elected member of the city council who was later appointed to represent the council on a local metropolitan planning board. In her capacity as an appointed member of the body, she wrote a letter taking a position at odds with one maintained by the city council. As a result of her actions, the council removed her from her appointed position and she sued. *Id.* at 118-119.

The plaintiff in *Rash-Aldridge* concededly made the statements for which she was removed as an appointed representative of the council, and not, as is alleged here, in her capacity as an elected representative. However, that fact was immaterial to the Fifth Circuit's decision. Rather, in concluding that the plaintiff's First Amendment rights had not been violated, the Fifth Circuit emphasized that her removal from the appointed office had "no implication of [her] fundamental rights as an elected official." *Id.* at 119. "Her capacity as an elected official was not compromised because the council did not try to remove her from her seat on the council nor take away any privileges of that office because of what she said or did." *Id.*

The Fifth Circuit did not address whether the plaintiff's speech would be protected under the First Amendment. But that is of little moment. In *Rash-Aldridge*, as in *Blair*, the court drew an important distinction between types of retaliation against elected officials: the type of retaliation at issue in *Bond*, which impedes elected officials' ability to serve as effective representatives, and is, therefore, impermissible; and the type of retaliation at issue here, where

22

an elected official is removed from an unrelated position that does not interfere with his or her role as an elected official and that, accordingly, does not run afoul of the First Amendment.[6]

To be sure, as we indicated in our discussion on the applicability of *Garcetti* to elected officials' speech, we do not now decide these constitutional issues and what retaliation against elected officials, if any, violates the First Amendment. Rather, we consider this legal landscape to decide whether Appellants are entitled to qualified immunity. Contrary to the District Court, we conclude that these opinions suggest that elected officials who are retaliated against by their peers have limited recourse under the First Amendment when the actions taken against them do not interfere with their ability to perform their elected duties.

---

[6] We are mindful that the underlying facts adduced at trial in *Squires v. Bonser*, 54 F.3d 168, 171 (3d Cir. 1995), a case cited by Werkheiser and decided by a panel of this court that included the undersigned, bear a striking resemblance to the current action. Nonetheless, on appeal in *Squires*, the only question before us was whether the district court's denial of the former Roadmaster's request for reinstatement as a remedy was inappropriate. As a result, the analysis we employed in *Squires* offers little guidance here. Nonetheless, the fact that a jury awarded a plaintiff in Werkheiser's position damages on a nearly identical claim – a judgment seemingly at odds with the remainder of the case law on this issue – may suggest the unsettled nature of the law as to this issue as well.

23

There is no allegation here that the failure to reappoint Werkheiser as Roadmaster in any way excluded him from Town Supervisors' meetings, interfered with his rights, privileges, or responsibilities as an elected official, or hindered his ability to fulfill his elected duties. Indeed, the complaint indicates that although he was not reappointed as Roadmaster in January of 2013, his term as Township Supervisor did not expire until the end of that year and there is no indication that he did not fully and ably serve until the completion of his term. Thus, unlike in *Bond* or *Monteiro*, where an elected body attempted to prevent an official from carrying out the duties bestowed upon him by his constituents, here, the Board of Supervisors merely declined to offer Werkheiser a position that was wholly unrelated to his position as an elected official and that it had provided him with in the first place. Against this legal backdrop, and under these circumstances, it is not beyond debate that a reasonable official in Appellants' position would have understood that retaliating against Werkheiser by denying him reappointment would violate his constitutional rights. As a result, Appellants are entitled to qualified immunity.

## IV.

For the foregoing reasons, we vacate the District Court's order and judgment dated August 8, 2013 and remand for further proceedings consistent with this opinion.

24