NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 16-3975

———————————

HAROLD WERKHEISER,
Appellant

v.

POCONO TOWNSHIP BOARD OF SUPERVISORS;
FRANK HESS, Supervisor; HENRY BENGEL, Supervisor

———————————

Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. No. 3-13-cv-01001)
District Judge: Honorable A. Richard Caputo

———————————

Argued July 11, 2017

Before: MCKEE, AMBRO, and ROTH, <u>Circuit Judges</u>

(Opinion filed: August 10, 2017)

Michael S. Fettner
Cletus P. Lyman            [Argued]
Michael T. Sweeney
Lyman & Ash
1612 Latimer Street
Philadelphia, PA 19103
        *Counsel for Appellant*

Steven E. Hoffman          [Argued]
Norris McLaughlin & Marcus
515 West Hamilton Street, Suite 502
Allentown, PA 18101
        *Counsel for Appellees*

OPINION[*]

AMBRO, Circuit Judge

## I. BACKGROUND

From 2008 through 2013 Harold Werkheiser served as one of three members of the Pocono Township's Board of Supervisors, a publicly elected body that acts as the Township's municipal government. As part of his service, Werkheiser was appointed annually by his colleagues to act as the Township's "Roadmaster," an office that oversees the municipality's infrastructure. "Pennsylvania law expressly allows for a member of the Board to serve as a superintendent or roadmaster." *Squires v. Bonser*, 54 F.3d 168, 170 (3d Cir. 1995), *as amended on reh'g* (May 8, 1995), *as amended on reh'g* (June 22, 1995); *accord* 53 Pa. Stat. § 65602(a). Werkheiser notes that his two immediate predecessors as Roadmaster were members of the Board of the Supervisors, as was his successor. (Indeed, the Township submits that, during the 30 years for which it has records, every one of its Roadmasters had been concurrently a member of the Board of Supervisors.)

The Roadmaster appointment came to an end before the conclusion of Werkheiser's service as a Supervisor. In 2012, when another member of the Board, Frank Hess, became sick, the Township hired an interim town manager to perform

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

administrative duties that Hess had previously handled. When Hess recovered, and the Board hired the interim town manager on a permanent basis, Werkheiser broke ranks with the other members of the Board. He believed Hess should have taken back the duties left to the town manager in Hess's absence. So Werkheiser publicly criticized Hess and the town manager on a number of occasions, objecting that, now that Hess had recovered, the Township was paying two people to do one job.

In response to Werkheiser's public criticism, a majority of the Board of Supervisors declined to reappoint him as Roadmaster at a public meeting in January 2013. Instead the Board appointed its third member, Henry Bengel, for the position. Despite the loss of his Roadmaster job, Werkheiser remained an active member of the Board throughout 2013.

Werkheiser filed a complaint alleging that the Township and his fellow Supervisors violated the First Amendment by retaliating against him for his public criticism and that Hess and Bengel violated Pennsylvania's Sunshine Act, 65 Pa. Stat. § 701 *et seq.*, by discussing Township business without him. The District Court initially rejected Hess and Bengel's qualified-immunity defense, but a panel of our Court reversed on appeal. *Werkheiser v. Pocono Twp.*, 780 F.3d 172, 181 (3d Cir. 2015).

Before us now are the District Court's grant of summary judgment to the Township on Werkheiser's First Amendment claim and the Court's dismissal without prejudice of his claim under the Sunshine Act. Because we agree with the Court that the

3

type of retaliation Werkheiser cites is not actionable under the First Amendment[1] and dismissal without prejudice of his remaining state-law claim was appropriate under 28 U.S.C. § 1367, we affirm.

## II.     ANALYSIS

### A.     First Amendment Retaliation

As an elected member of the Board of Supervisors, Werkheiser sought and obtained a job directly accountable to his fellow Supervisors.  In order to continue his work as Roadmaster, he had to stay in the good favor of the Board.  Moreover, he served at its pleasure.  Although the parties agree the Board could have elected a non-member as Roadmaster, all of Werkheiser's known predecessors and his immediate successor were elected Supervisors like him.  In short, Werkheiser's Roadmaster job was a political one and depended on maintaining favor with a majority of his colleagues on the Board.

By publicly criticizing his colleagues' positions on an issue of Township policy, Werkheiser lost favor, and without it also lost his position as Roadmaster.  Thus he "essentially asks this court to declare that a politically motivated act, undertaken by a majority of his fellow elected Board of Supervisors, pursuant to their proper authority, nonetheless violates the First Amendment if it is taken in retaliation for speech made in

---

[1] In *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006), the Supreme Court explored the limits on freedom of speech that citizens must accept when they choose to enter government service as employees.  While the previous panel in this case cast doubt on *Garcetti*'s applicability to elected officials, *Werkheiser*, 780 F.3d at 178 ("Many of the reasons for restrictions on employee speech appear to apply with much less force in the context of elected officials."), it declined to settle the issue.  We do the same.  Because we hold that the retaliation Werkheiser alleges is not actionable under the First Amendment, we need not decide whether his service as an elected official curtailed his right to freedom of speech.

his capacity as an elected official." *Werkheiser*, 780 F.3d at 181. But as the previous panel to hear this case noted, "not all retaliation violates the First Amendment" because the right to free speech does not "guard against every form of political backlash that might arise out of the everyday squabbles of hardball politics." *Id.*

Courts have been reluctant to interfere with intra-legislative political retaliation that falls short of impeding a legislator's ability to carry out his basic duties. *Zilich v. Longo*, 34 F.3d 359, 363 (6th Cir. 1994) ("The First Amendment is not an instrument designed to outlaw partisan voting or petty political bickering through the adoption of legislative resolutions."). For example, the Second Circuit has held the First Amendment did not protect a legislative aide fired in retaliation for the political affiliations and votes of his boss, a city councilor. *Camacho v. Brandon*, 317 F.3d 153, 162 (2d Cir. 2003). The Court noted that the dismissal of an opponent's key staffers is a time-honored means of exacting political retribution consistent with the Constitution's constraints; it reasoned that "to hold otherwise would subject to litigation all manners and degrees of politically motivated, retaliatory conduct directed at public officials." *Id.* at 162 & n.8 (citing Robert A. Caro, *The Years of Lyndon Johnson: Master of the Senate* 565–66 (2002)).

Other courts have reacted similarly when asked to second-guess an official's removal from a political post in response to public policy disagreements. *See e.g.*, *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 544 (9th Cir. 2010) (no action under First Amendment after school board declined to reelect board member to position of vice president because majority of members desired "a vice president who shared their views"); *Rash–Aldridge v. Ramirez,* 96 F.3d 117, 118 (5th Cir. 1996) (*per curiam*) (city councilor could not

5

pursue First Amendment claims when removed from appointment to metropolitan planning board for taking position at odds with council majority); *Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988, 996 (5th Cir. 1992) (First Amendment did not protect school superintendent from relief from duties because of his public opposition to winning school board candidates). "Disagreement is endemic to politics, and naturally plays out in how votes are cast." *Blair*, 608 F.3d at 546. Indeed, "we *expect* political officials to cast votes in internal elections in a manner that is, technically speaking, retaliatory, *i.e.*, to vote against candidates whose views differ from their own." *Id.* at 544 (emphasis in original). Put simply, a job like Werkheiser's gained through politics may be lost the same way.

None of this is to say, of course, that absolutely anything goes in the political arena. Because "[t]he manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy[,]" an elected legislator may not be refused his seat in the legislature because of his public statements. *Bond v. Floyd*, 385 U.S. 116, 135–36 (1966). Courts have interpreted *Bond* to "prohibit retaliation against elected officials for speech pursuant to their official duties [] when the retaliation interferes with their ability to adequately perform their elected duties." *Werkheiser*, 780 F.3d at 181; *Rash-Aldridge*, 96 F.3d at 119 (city councilor's removal from metropolitan planning board did not implicate *Bond*, as her "capacity as an elected official was not compromised because the council did not try to remove her from her seat on the council nor take away any privileges of that office because of what she said or did").

6

But Werkheiser does not claim the Board's failure to reelect him as Roadmaster interfered with his duties as an elected Supervisor. Indeed, he explicitly disclaimed any such interference at oral argument.[2] Accordingly, we affirm the District Court's grant of summary judgment on Werkheiser's First Amendment claim.

## B. Sunshine Act

Having decided to grant summary judgment to the Pocono Township on Werkheiser's First Amendment claim, the District Court dismissed without prejudice his remaining claim brought under Pennsylvania's Sunshine Act. Werkheiser contends the District Court instead should have remanded the claim to state court.

He cites 28 U.S.C. § 1447(c), which states, "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." But § 1447(c) does not bear on this case. The District Court did not *lack* subject matter jurisdiction: 28 U.S.C. § 1367 provides "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III[.]" The Court simply declined to exercise jurisdiction as permitted by § 1367(c)(3) and did not err by dismissing the claim without prejudice. *See Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) ("If a district court decides not to exercise supplemental jurisdiction and therefore

---

[2] *See also Werkheiser*, 780 F.3d at 183 ("There is no allegation here that the failure to reappoint Werkheiser as Roadmaster in any way excluded him from Town Supervisors' meetings, interfered with his rights, privileges, or responsibilities as an elected official, or hindered his ability to fulfill his elected duties. Indeed, the complaint indicates that[,] although he was not reappointed as Roadmaster in January of 2013, his term as [a] Township Supervisor did not expire until the end of that year and there is no indication that he did not fully and ably serve until the completion of his term.").

dismisses state-law claims, it should do so without prejudice, as there has been no adjudication on the merits.").

## III. CONCLUSION

By convincing his colleagues on the Board of Supervisors to support his patronage appointment as Roadmaster, Werkheiser held that position from 2008 to early 2013. He lost that support, and position as Roadmaster, because of political disagreements with his colleagues. Yet he remained an active member of the Board without any undue restrictions on his ability to perform his duties as a Supervisor. In these circumstances, the First Amendment offers Werkheiser no relief. Because his lone federal claim was not actionable, the District Court acted within its discretion by dismissing without prejudice the remaining state-law claim. Accordingly, we affirm.