NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 19-2181

---

JOHN CURLEY,
Appellant

v.

MONMOUTH COUNTY BOARD OF CHOSEN FREEHOLDERS; SERENA DIMASO, ESQ., in her official capacity as Monmouth County Chosen Freeholder; THOMAS A. ARNONE, in his official capacity as Monmouth County Chosen Freeholder; GARY RICH, in his official capacity as Monmouth County Chosen Freeholder; LILLIAN BURRY, in her official capacity as Monmouth County Chosen Freeholder; MICHAEL FITZGERALD, ESQ., in his individual and official capacity as County Counsel; TERI O'CONNOR, in her individual and official capacity as County Administrator; PATRICK IMPREVEDUTO, in his official capacity as Monmouth County Chosen Freeholder; GERRY P. SCHARFENBERGER, in his individual capacity and as Monmouth County Chosen Freeholder

---

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 3-17-cv-12300)
District Judge: Honorable Brian R. Martinotti

---

Submitted under Third Circuit L.A.R. 34.1(a)
June 30, 2020

BEFORE: KRAUSE, PHIPPS, and GREENBERG, Circuit Judges.

(Filed: July 15,2020)

OPINION[*]

GREENBERG, Circuit Judge.

## I. INTRODUCTION

This matter comes on before this Court on the appeal of Plaintiff-Appellant John Curley who challenges the District Court's orders dated July 25, 2018, and April 29, 2019,[1] dismissing pursuant to Fed. R. Civ. P. 12(b)(6) his amended complaint and denying his motion pursuant to Fed. R. Civ. P. 15 for leave to amend his complaint further. For the reasons stated below, we will affirm the District Court's orders.

## II. FACTUAL BACKGROUND

From 2010-2018, Curley was an elected freeholder on the Monmouth County Board of Chosen Freeholders (the "Board"), the County government governing body. According to Curley, although a Republican, he "has been a persistent and regular

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The July 25, 2018 Order dismissed without prejudice Curley's First Amended Complaint. The April 29, 2019 Order dismissed his Second Amended Complaint and denied him leave to file a Third Amended Complaint. The Court's opinions may be found at 2018 WL 3574880 (D.N.J. July 25, 2018) and 2019 WL 1895065 (D.N.J. Apr. 29, 2019). Curley informed the District Court in correspondence dated May 3, 2019, that he did not intend to seek leave to file another amended complaint. Accordingly, the action was concluded in the District Court and we have jurisdiction on this appeal.

advocate of positions that run contrary to" those of the Republican members of the Board, and to the County's Republican leadership. (Second Amended Complaint ("SAC") ¶ 3.)

In June 2017, Defendants Michael Fitzgerald ("Fitzgerald") and Teri O'Connor ("O'Connor"), respectively the County counsel and County administrator, hired Mary Catherine Cuff, a retired New Jersey appellate judge, to investigate a sexist comment Curley allegedly made at the May 2017 Bradley Beach, Monmouth County, Memorial Day parade. On October 13, 2017, Cuff issued a report (the "Report"), which examined the grievance and other allegations to the end that Curley had engaged in sexually harassing and/or sexist behavior. Ultimately, Cuff determined that many of the allegations made against Curley were credible.[2]

Fitzgerald distributed the Report to the Board which led to the Board having a special meeting on November 29, 2017, in an executive session. The Board discussed the Report at the special meeting following which Curley gave a letter and memorandum prepared by his attorney to the Board voicing Curley's objections to the proceedings. But Curley did more than complain because he instituted this action on December 1, 2017.

After the November 29, 2017 meeting, Fitzgerald notified Curley that the Board would hold a special meeting on December 4, 2017, to consider two resolutions—one to amend the County's discrimination policy and another to censure Curley. In the

[2] Not all of the allegations against Curley were sexual in nature, but Cuff found that Curley's actions supported an inference that his conduct was sexually discriminatory and/or created a hostile work environment.

meantime, O'Connor prohibited Curley from: (1) entering the Hall of Records, a Monmouth County building in which Curley had his office, except that he could enter when he was conducting official County business, and (2) having contact with any County employee, including his own aide. Although those restrictions remained in place for two days,[3] notwithstanding the prohibition, Curley returned to the Hall of Records to "fulfill[] his duties as an elected [f]reeholder." (SAC ¶ 152.) At the special meeting,[4] the Board unanimously voted to adopt the resolution to censure Curley and later read the censure into the record at the following public Board session.

Curley alleges that following the adoption of the censure resolution, Defendants prevented him from performing his elected duties in a variety of ways, such as: giving him "minimal oversight over far fewer divisions and programs within the County" than he had had previously; O'Connor "attempted to usurp" Curley's role on various oversight committees; and Fitzgerald prevented Curley from seeking effective legal advice. (SAC ¶¶ 191-95.) Fitzgerald and O'Connor also retained Cuff to perform an additional investigation, and on November 5, 2018, Fitzgerald released the agenda for a November 8, 2018 Board meeting, which included a proposed resolution to authorize Cuff to conduct a third investigation. Curley objected to Fitzgerald's releasing the agenda on the day preceding the November 6, 2018 freeholder election at which Curley was a losing

---

[3] When Curley initiated this action he sought temporary restraints and a preliminary injunction. The parties appeared before the District Court on December 4, 2017, and ultimately agreed to the dissolution of the restrictions against Curley and to the filing of the Report under seal.

[4] The special meeting was adjourned to December 8, 2017.

independent candidate as he believed the release would negatively affect his bid for reelection.

While the Board proceedings went on, this litigation that Curley already had instituted continued. Curley pleaded claims under 42 U.S.C. § 1983 and New Jersey law, principally on the theory that Defendants retaliated against him for his anti-Republican Party actions as a freeholder in violation of his rights to free speech. In particular, he pleaded that "Defendants' actions . . . were intended to prevent [him] from engaging in constitutionally protected speech in furtherance of his position as a [f]reeholder." (SAC ¶ 203.)

In his Second Amended Complaint, Curley included a section entitled, "Curley's Political Positions Put[] Him at Odds with the County Republican Establishment." (SAC p. 11). He then summarized positions he took on certain matters contrary to that of the establishment including: (1) "Opposition to 'Good Old Boys' Club"; (2) "Exposing Corruption at Brookdale Community College"; (3) "Opposition to Lucas Land Deal"; (4) "Conflict Over Authorization for County Healthcare for Freeholders"; (5) "Opposition to County Wellness Center"; (6) "Sale of County Owned Nursing Home"; (7) "Opposition to Howell Township Solid Waste Facility"; and (8) "Monmouth County Tax Board." (SAC pp. 11-18.) In his Second Amended Complaint, Curley set forth details of these matters and explained his opposition to the County Republican establishment on these points. Notably, the last of his acts that can be characterized as a free speech matter was in 2015.

The District Court dismissed Curley's First Amendment claim and declined to exercise supplemental jurisdiction over his state-law claims. This appeal followed.

## III. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a), and we have jurisdiction under 28 U.S.C. § 1291. We review de novo a district court's dismissal under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Geness v. Cox, 902 F.3d 344, 353 (3d Cir. 2018). In determining whether a plaintiff has stated a claim that can survive a motion to dismiss under Rule 12(b)(6), "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff. However, we disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp., 908 F.3d 872, 878-79 (3d Cir. 2018) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Zuber v. Boscov's, 871 F.3d 255, 258 (3d Cir. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)). Though we ordinarily review a district court's "denial of leave to amend for abuse of discretion[,] we review de novo its determination that amendment would be futile." United States ex rel. Schumann v. AstraZeneca Pharms. L.P., 769 F.3d 837, 849 (3d Cir. 2014).

## IV. DISCUSSION

To successfully plead a First Amendment retaliation claim, a plaintiff must allege that he or she engaged in: "(1) constitutionally protected conduct, (2) [there was] retaliatory action [against him or her] sufficient to deter a person of ordinary firmness from exercising his [or her] constitutional rights, and (3) [there was] a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Independence Township, 463 F.3d 285, 296 (3d Cir. 2006). As a general matter, for Defendants' alleged retaliatory conduct to be actionable, that conduct must have had more than a de minimis impact on Curley's First Amendment rights. See McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006); Brennan v. Norton, 350 F.3d 399, 419 (3d Cir. 2003).

Here, we find Curley failed to plead facts plausibly indicating a causal connection between his conduct and the alleged retaliatory acts. A plaintiff must establish that there is a causal connection between the constitutionally protected conduct and the alleged retaliatory action because if a defendant would have engaged in the actions it did even if the plaintiff had not engaged in his or her conduct it cannot be said that the allegedly retaliatory act infringed the plaintiff's First Amendment rights. In this case significant time has passed between the last of the anti-establishment conduct in which Curley engaged and Defendants' actions that Curley claims retaliated against him for his conduct. Though that time lapse does not necessarily mean that Defendants did not take their actions to retaliate against Curley for his conduct, this passage of time and lack of corroborating evidence renders Curley's claims implausible. See e.g., Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Although our precedent holds that "unusually suggestive temporal proximity" is only one way a retaliation plaintiff can plead causation, see Mirabella v. Villard, 853 F.3d 641, 652 (3d Cir. 2017) (citation omitted), "there is no bright line rule for the time that may pass between protected speech and what constitutes actionable retaliation," Canard v. Pa. State Police, 902 F.3d 178, 183 (3d Cir. 2018). Still, we have allowed time-attenuated retaliation claims to proceed to discovery where there is a "pattern of antagonism" that sheds light on the "timing of events" enough to justify an inference of causation. Canard, 902 F.3d at 184 (citation omitted); see Lauren W., 480 F.3d at 267. Absent factual allegations that could support a finding of causation, a significant period of time between the alleged protected conduct and retaliatory acts is fatal to the retaliation claim. See, e.g., Estate of Smith v. Marasco, 318 F.3d 497, 512–13 (3d Cir. 2003) (involving a gap of approximately a year and a half). And ultimately, if the scales are even and the plaintiff has pleaded facts that indicate a "mere possibility of" a causal connection, dismissal is appropriate. Iqbal, 556 U.S. at 679.

Here, however, there is a gap of two and half years between the latest protected conduct and the earliest retaliatory act pleaded in Curley's complaint. And while Curley's allegations of protected conduct go back to 2008, the complaint contains no specific allegations indicating any "pattern of antagonism" on the part of Defendants, or for that matter any other allegations giving rise to an inference of causation. In his briefs on appeal, Curley asserts that Defendants, after years of "simmering resentment," "seized the opportunity to retaliate against [him] beginning in June 2017." (Appellant's Reply Br. at 10.) But "simmering" here is a synonym for "invisible," and none of Curley's

factual allegations, even if assumed true, provides a basis for a finding of the critical causal link between protected speech and retaliatory acts. For that reason, Curley's complaint failed to plead a plausible First Amendment retaliation claim

Moreover, in addressing the merits of this appeal, Curley contends that the District Court erred in dismissing his action because the Court invoked an "overly onerous standard" in that it required Curley to plead "severe" conduct by Defendants for his complaint to survive their motions to dismiss. We disagree with Curley's position on this point. The Court correctly applied our relevant precedent in reaching its conclusion, and repeatedly explained that to be actionable, conduct must interfere with an elected official's "ability to adequately perform [his or her] elected duties." Werkheiser v. Pocono Township, 780 F.3d 172, 181 (3d Cir. 2015). Taken in context, a statement that the Court made referencing an issue of the severity of Defendants' allegedly retaliatory conduct merely reinforced its conclusion that Curley did not allege that the conduct in which Defendants engaged interfered with his performance of his elective duties. Thus, the Court applied the correct standard and did not place an enhanced pleading burden on Curley.[5] Nonetheless, in light of our conclusion that Curley has failed to plead causation,

[5] Curley asks us to analyze whether the issue of "severity" of a defendant's conduct is a factual matter that must be determined by a jury. But the case on which Curley relies on this point, Brennan v. Norton, 350 F.3d 399 (3d Cir. 2003), is distinguishable from this case in that it concerns a public employee to whom different rules apply than those applicable to an elected public official on a governing body. Moreover, the assessment of severity is seemingly more of a legal than factual matter in which a court should make the assessment. See e.g., Bonkowski v. Oberg Indus. Inc., 787 F.3d 199, 203 (3d Cir. 2015). As such, we reject his jury trial contentions.

we need not address the District Court's application of that standard to the facts alleged in his Second Amended Complaint.

Because Curley did not sufficiently plead a First Amendment retaliation claim, we will affirm the District Court's July 25, 2018 and April 29, 2019 Orders dismissing the action and denying the motion to amend. Inasmuch as Curley's First Amendment retaliation claims fail, we will not address Defendants' arguments pertaining to legislative and qualified immunity.