[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-10594

Non-Argument Calendar

_____

TAYLOR BIRO,

Plaintiff-Appellant,

*versus*

CITY OF TALLAHASSEE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:22-cv-00442-AW-MJF

_____

Before JILL PRYOR, NEWSOM, and BRANCH, Circuit Judges.

PER CURIAM:

In 2022, Plaintiff Taylor Biro was removed from her position as an appointed member of an advisory body that reviewed police policies and conduct and reported to the City Commission of Tallahassee, Florida. Biro alleges that the City Commission voted to remove her because she had displayed a sticker containing an anti-police message that the Commission believed demonstrated anti-police bias and was contrary to the purpose and mission of the advisory board. She further alleges that the City fired her in retaliation for her objections to the hiring of a third-party contractor who was hired to train members of the police department.

Biro sued the City, arguing that her removal violated her First Amendment rights because she was expressing her opinion on a matter of public concern. The district court granted the City's motion to dismiss after finding that, under the *Pickering*[1] test, the City's interest in the effective administration of government services outweighed Biro's First Amendment interests. On appeal, Biro challenges the district court's application of the *Pickering* test. After careful review, we affirm.

---

[1] *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968).

## I.    Background

As an initial matter, because this appeal reaches us at the motion to dismiss stage, we accept all alleged facts as true and draw all factual inferences in the light most favorable to the plaintiff's complaint. *See St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). Ordinarily, this standard limits our review "to the four corners of the complaint." *Id.* We may, however, consider exhibits attached to the City's motion to dismiss if they are central to Biro's claims and are undisputed, *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002), or if they are government records of which we are entitled to take judicial notice, *see Dimanche v. Brown*, 783 F.3d 1204, 1213 n.1 (11th Cir. 2015) (citing Fed. R. Evid. 201(b)(2)).

The City attached several exhibits to its motion to dismiss. Biro's counsel ultimately consented to consideration of some but not all of the City's exhibits, even though she now appeals the district court's decision to consider those exhibits. Regardless, like the district court, we now consider those consented-to exhibits in our analysis. These exhibits include the ordinance establishing the Board, the guidelines for the appointment process to the Board, the Board's policies and procedures guide book, the 2021 Annual Report for the Board, and the City Commission meeting minutes at which the City decided to establish the Board.

In late 2020, the city of Tallahassee, Florida established the Citizens Police Review Board ("the Board"). The explicit purpose of the Board "is to foster transparency, enhance communication, and ensure a relationship of trust and respect" between the people

of Tallahassee and the Tallahassee Police Department ("the Department") through review of police policies and actions by "an unbiased panel of citizens." The Board's responsibilities included: (1) reviewing reports of internal investigations; (2) suggesting "revisions or additions to Department policies and procedures" with respect to internal investigations; (3) making recommendations "to the Chief of Police and the City Manager as to current and proposed City Police Department policies, procedures, and practices;" and (4) annually reporting their findings and recommendations to senior administrative personnel. The Board is composed of nine unpaid volunteers, five of whom are appointed individually by each member of the five-person City Commission ("the Commission") and four of whom are appointed by the Commission as a whole after being nominated by local advocacy groups. At least some Board meetings are open to the public.

After the Board was formed, Biro was nominated for a non-partisan role on the Board and was appointed by the Commission. Though she alleges that she "was not a member appointed by an individual member of the City Commission," she does concede that she was still an "appointee."

During her two years of serving on the Board, Biro attended all meetings, bringing a cup with a sticker that says, "Abolish Police" that was "prominently displayed" in front of her. This cup was always placed on the table in front of Biro. No city official, member of the Board, or attendee of the Board meetings ever

mentioned the "Abolish Police" sticker to Biro prior to October 2022.

In August 2022, Biro engaged in a public dispute with the Department over the Department's relationship with Eddie Gallagher, a consultant and former Navy Seal who had been convicted of a crime in relation to his service. Biro became aware that Gallagher was training Department officers when she saw an Instagram post of Gallagher and about a dozen members of the Department, as well as a tweet commenting on the initial post. Biro wrote a letter to the Tallahassee mayor in which she expressed apprehension about the Department's relationship with Gallagher and expressed concern about posts Gallagher made on social media and about the public's perception of the Department given the Department's decision to hire Gallagher. The same day that Biro sent the email to the mayor, she leaked it to the *Tallahassee Democrat*, a local newspaper,[2] and gave an interview to a reporter for the *Tallahassee Democrat*. Excerpts from the letter and her interview were published later that day.

Biro continued to press members of the City's administration for information about Gallagher.[3] At the

---

[2] The *Tallahassee Democrat* is a local newspaper centered on Tallahassee and Leon County, Florida.

[3] The Department denies that it hired Gallagher, but Biro alleges that a newspaper article shows that the Department "was not truthful in disclosing its relationship with Gallagher." Because of the posture of this case, we take as true Biro's allegation that the Department hired Gallagher.

September Board meeting, Biro sponsored a resolution to request testimony from a member of the Department regarding the selection of police officer trainers. A week later, during a City Commission meeting, the police chief provided testimony to the Commission that "downplayed the relationship between [the Department] and Gallagher." He also refused to send a member of the Department to speak before the Board. Biro then used the October Board meeting to publicly admonish the Department's failure to send a representative to the Board and spoke about "the dishonesty of [the Department] in covering up the hiring of Gallagher."

Biro's increasing notoriety culminated in the City Commission becoming aware of her "Abolish Police" sticker around the middle of October.[4] At least one City Commissioner immediately expressed concern that a member of the Board would publicly advocate anti-police sentiment because that message would give the appearance that the Board member was biased. During the November 2022 City Commission meeting, pro-police advocacy groups expressed their displeasure with the message that Biro shared at Board meetings. Though the Board voted that Biro

---

[4] Initially, the City Commissioners believed that Biro's sticker included a different anti-police message, but they were aware of the correct language before she was removed from the Board.

should not be removed, the Commission removed her from the Board in December 2022.[5]

Biro filed a complaint against the City of Tallahassee alleging one count of First Amendment retaliation. The district court granted the City's motion to dismiss, finding that, under the *Pickering* test, the City's interest in the effective and efficient fulfillment of the advisory board's mission outweighed Biro's interests as a public-facing policy advisor in speech that undermined these goals. The district court found that the City's interest outweighed Biro's interest because the Board's purpose was "[t]o enhance trust between the Tallahassee Police Department . . . and the community by creating an *unbiased* panel of volunteers to make policy recommendations" and that Biro's decision to bring "a cup with an antipolice expression on it to Review Board meetings" was "inconsistent with the City's interest in maintaining an unbiased Review Board." The district court also found that other factors favored the City over Biro—the time, place, and manner of the restriction was appropriate; Biro had a policymaking role, and the City has a right to staff these roles "with employees that they fully trust"; and Biro was appointed by the City Commission. The district court's dismissal included leave to amend.

---

[5] Biro alleges that another member of the Board, Malik Gray, holds abolitionist views and expressed those views during Board meetings, but Gray was never removed from the Board.

Biro amended her complaint twice but the district court dismissed both amended complaints. The first amended complaint included an alternative theory for her removal—her opposition to the hiring of Gallagher and her accusation that the police chief was dishonest. The second amended complaint includes allegations that another member of the Board was an abolitionist but was not removed for holding abolitionist views.[6] But even though Biro added new facts to her first and second amended complaints, those allegations did not substantially alter the *Pickering* analysis the district court employed or the conclusions that the district court reached. Accordingly, the district court dismissed the second amended complaint with prejudice. Biro timely appealed.

## II.    Standard of Review

We review a district court's dismissal of a complaint for failure to state a claim *de novo*. *Hoever v. Marks*, 993 F.3d 1353, 1357 (11th Cir. 2021) (*en banc*).

## III.    Discussion

Biro argues that the district court erred in dismissing her complaint for First Amendment retaliation because her complaint properly alleged that the City violated her right to free speech when it fired her for displaying an "Abolish Police" sticker at Board meetings. She also argues that the district court erred in dismissing

---

[6] Biro's second amended complaint describes an "abolitionist" as someone who "believes in abolishing the police."

24-10594                Opinion of the Court                9

her complaint because the City fired her in retaliation for her objections to the Gallagher hiring.  The district court, however, properly granted the City's motion to dismiss because the City's interest in the effective provision of government services outweighs Biro's interest in free speech under the *Pickering* test. Also, Biro's additional arguments are foreclosed by our precedent in *McKinley v. Kaplan*[7] because she is a public-facing, appointed employee of an advisory body providing policy advice to the government.  Accordingly, the district court properly granted the City's motion to dismiss.

### A.  The district court correctly applied the Pickering test to evaluate Biro's First Amendment retaliation claim

"[A] public employee may not be discharged or punished in retaliation for exercising her right to free speech under the First Amendment."  *O'Laughlin v. Palm Beach Cnty.*, 30 F.4th 1045, 1050 (11th Cir. 2022).[8]  But "[a] public employee's free-speech rights are not absolute."  *Id.*  Courts resolve government employees' First Amendment claims by balancing an employee's interests "in commenting upon matters of public concern" and the

---

[7] 262 F.3d 1146 (11th Cir. 2001).

[8] The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."  U.S. Const. amend. I.

government's interest, as an employer, "in promoting the efficiency" of public services. *Buending v. Town of Redington Beach*, 10 F.4th 1125, 1135 (11th Cir. 2021) (quoting *Pickering*, 391 U.S. at 568). This "*Pickering* test" requires the employee to show that:

> (1) the speech involved a matter of public concern; (2) the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities; and (3) the speech played a substantial part in the adverse employment action. If an employee satisfies her burden on the first three steps, the burden then shifts to the employer (4) to show by a preponderance of the evidence that it would have made the same decision even in the absence of the protected speech.

*O'Laughlin*, 30 F.4th at 1051.[9]

For this motion to dismiss, the parties only dispute the complaint's sufficiency with respect to the second prong—the balancing prong.[10] In balancing an employee's interests against the government's, courts consider "(1) whether the speech at issue impedes the government's ability to perform its duties efficiently,

---

[9] Because we hold that Biro's claim fails under *Pickering* balancing, we decline the City's invitation to analyze this claim under *Elrod v. Burns*, 427 U.S. 347 (1977), and *Branti v. Finkel*, 445 U.S. 507 (1980).

[10] The district court found that the City conceded that Biro satisfied the first and third elements of the *Pickering* test for the sake of the motion to dismiss. On appeal, the City does not challenge that conclusion.

(2) the manner, time and place of the speech, and (3) the context within which the speech was made." *Chesser v. Sparks*, 248 F.3d 1117, 1124 (11th Cir. 2001). Even though it requires balancing, we may apply *Pickering* at the motion to dismiss stage. *See Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1293–94 (11th Cir. 2007) (applying *Pickering* to dismiss a plaintiff's free speech claim for failing to state a claim).

### i. Biro's speech impeded the City's stated purpose in establishing the Board

Biro argues that the district court should not have dismissed her complaint because her alleged speech did not impede the City's ability to perform its duties effectively. She contends that "the true purpose and mission of the Board" is not to be "unbiased" but "to review, from a position of neutrality, . . . police matters." The facts alleged in Biro's complaint belie her argument.

The explicit purpose of the Board "is to foster transparency, enhance communication, and ensure a relationship of trust and respect" between the people of Tallahassee and the Department through review of police actions and conduct by "an unbiased panel of citizens." While Biro is correct that the Board has review-based and advisory responsibilities, the City Commission clearly mandated that the Board was to foster trust and be "unbiased." And at least one City Commission member found that Biro's sticker demonstrated that Biro was biased. Accordingly, even if it had not done so at any prior time, the City was free to determine that a sticker evincing anti-police bias would be inconsistent with

12                    Opinion of the Court                    24-10594

the stated mission of the Board because the appearance of bias could undermine trust.[11]

And, importantly, the City need not demonstrate that an employee has impeded the effectiveness of its operations for this factor to weigh in the City's favor. Instead, merely "[a] reasonable possibility of adverse harm is all that is required." *Moss v. City of Pembroke Pines*, 782 F.3d 613, 622 (11th Cir. 2015); *see also Ross v. Clayton Cnty.*, 173 F.3d 1305, 1311 (11th Cir. 1999) ("[A] requirement of a showing of actual disruption would be overly burdensome to the public employer."); *Connick v. Myers*, 461 U.S. 138, 152 (1983) ("[W]e do not see the necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action."). Even so, Biro's conduct undeniably disrupted the efficiency of City operations. Her anti-police sticker became a topic of concern and a matter of discussion for members of the Board, the City Commission, and the public at large. Beyond the sticker, Biro consistently impeded the City's actions by operating outside

---

[11] The district court noted below that Biro sought to infer retaliatory causation based on the temporal proximity between her objection to Gallagher and the response to her sticker, primarily because Biro alleged that she had not been fired in over two years of bringing the sticker to Board meetings. But the district court rejected this argument because "either the City could constitutionally terminate Biro for the sticker or it couldn't; Biro cites no authority suggesting it could waive its right by not terminating her immediately." Even the FAC, which included additional facts intended to allege a retaliatory motive, was rejected by the district court because it did not adequately allege retaliation.

official channels.  She launched attacks on the police chief, the Department, and the Gallagher hiring decision by first leaking her confidential email to the local newspaper, not by discussing these topics at Board meetings.  And these actions undermined an explicit purpose of the Board, which "is to foster transparency, enhance communication, and ensure a relationship of trust and respect" between the people of Tallahassee and the Department through review of police policies and actions by "an unbiased panel of citizens."  By going outside of official channels to discuss Department conduct and by displaying an explicitly anti-police message, Biro undermined the relationship of trust between the Department and the citizens of Tallahassee.[12]  Taken together, and based on the allegations in the complaint, Biro's speech and conduct demonstrated that she was an impediment to the effectiveness of the City's operations.

## ii.  *The time, place, and manner of Biro's speech weighs in the City's favor*

Biro also argues that her complaint should not have been dismissed because the time, place, and manner of her speech weigh in favor of her interests and not those of the City.  But, again, she is incorrect.

The time, place, and manner in which a government employee speaks weighs in the government's favor if the speech

_____

[12] Even Biro's complaint acknowledges that her actions have led to disruption of the City's police-related conduct.

affects "harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes performance of the speaker's duties or interferes with the regular operation of the [public employer's] enterprise." *Morris v. Crow*, 117 F.3d 449, 457–58 (11th Cir. 1997). On the other hand, the time, place, and manner of an employee's speech in private about matters of public concern typically will outweigh the government's alleged interest. *See Rankin v. McPherson*, 483 U.S. 378, 389 (1987). In *Morris*, a pollster's public speech weighed against the employee because the message was "disrespectful, demeaning, rude, and insulting," as perceived by the pollster's coworkers. *Morris*, 117 F.3d 458. Accordingly, we held that the time, place, and manner of the pollster's speech favored the government because it "could cause serious disciplinary problems, undermine employee morale, and impair harmony among co-workers." *Id.* By contrast, in *Rankin*, a government employee's interest in making a statement about an assassination attempt on the president outweighed the government's interest in the efficient functioning of the workplace because she made the statement privately to her boyfriend, no other employee heard that statement, and there was no "danger that [she] had discredited the office." *Id.*

Based on the facts as alleged in the complaint, the time, place, and manner factor weighs in the City's favor as a matter of law. Biro's cup with the anti-police sticker was "prominently displayed" in front of her at all Board meetings, which included some meetings open to the public. Thus, unlike *Rankin*, in which

24-10594                Opinion of the Court                15

the employee's critical speech was private, Biro chose to express an anti-police message that contradicted the mandate of the Board at each public meeting.[13] And like the pollster in *Morris*, Biro's speech directly undermined "close working relationships for which personal loyalty and confidence [were] necessary" because Biro's speech resulted in a breakdown of the relationship between the Board and the Department. In the wake of Biro's actions publicizing the Gallagher issue, the police chief "refused to allow anyone" from the Department to cooperate with the Board investigation of the Gallagher issue or to explain the processes by which trainers for Department personnel are selected. *See Morris*, 117 F.3d at 457. Further, even when Biro chose to speak outside of public Board meetings, such as when she leaked her letter about Gallagher to the local newspaper, she chose to do so in a time, place, and manner that increased the likelihood of "discredit[ing] the [City]" because she shared unverified information about Gallagher and the City's response with a media organization. Accordingly, the time, place, and manner of Biro's speech weighs in favor of the City's interest.

---

[13] Biro's briefing tries to recast the sticker as "one small sticker on [her] cup, which was covered in other stickers," but this statement is irrelevant because her complaint states that the cup with the "Abolish Police" sticker was "prominently displayed." She cannot claim that the sticker "was hardly intrusive" on appeal. We must take the facts as she pleaded them. *See St. George*, 285 F.3d at 1337.

### iii. The context of Biro's speech weighs in the City's favor

Finally, Biro argues that her complaint should not have been dismissed because the context in which she spoke weighs in favor of her interest in sharing information about police misconduct and not the City's interest. She notes that her position on the Board required her to "critically review" police activity and that the Board more generally "offer[ed] a critical link between the public and the City." Thus, sharing the information about Gallagher's hiring, which might not otherwise have faced scrutiny, was "squarely in line with the Board's mission and purpose." Biro's complaint dooms her contention, however, because her allegations make clear that her speech occurred in the context of her position, which was public-facing and involved public contact.

Our cases have addressed the "competing interests" of the *Pickering* factors, including the context factor, "on a case-by-case basis." *See Stough v. Gallagher*, 967 F.2d 1523, 1528 (11th Cir. 1992). One clear pattern, however, has emerged across our cases: the context factor weighs for the government for speech by a public-facing employee whose position involves public contact. *Shahar v. Bowers*, 114 F.3d 1097, 1104 (11th Cir. 1997). A public-facing employee acts as a "liaison" who might speak or "disseminate[] information to the public" for the government, *McKinley*, 262 F.3d at 1150, because such an employee "must speak or act . . . on the [government's] behalf." *Shahar*, 114 F.3d at 1104. Indeed, a public-facing employee's speech might "interfere with the [government's]

ability to handle certain kinds of controversial matters" or might "harm the public perception of the [government.]" *Id.* at 1105. Accordingly, the speech of a public-facing employee "tips the *Pickering* balance in favor of the government as an employer." *McKinley*, 262 F.3d at 1150.

Biro, as addressed above, was a public-facing employee whose role involved some public contact because at least some of the Board meetings were open to the public. Biro's own complaint acknowledges the Board's nature, outlining the public-facing role of the Board members and focusing on the Board's position as a potential avenue for communication between the public and the Department. Thus, the context of Biro's speech—which involved public contact—weighs in the City's favor as well.

In response to this conclusion, Biro argues that her speech fulfilled the Board's purpose and overall intent, but these arguments do not shift the context factor in her favor. Indeed, Biro's argument that the relevant context is the Board's purpose and not her position misunderstands our caselaw. Once we have determined that her role on the Board was public-facing and involved public contact, our cases demand that we weigh the context factor in the City's favor. *See McKinley*, 262 F.3d at 1150; *Shahar*, 114 F.3d at 1104.

Accordingly, and given that the City's interests outweigh Biro's interests under *Pickering*, she has failed to state a claim for First Amendment retaliation for her removal based on her "Abolish

Police" sticker and her objections to the hiring of Gallagher.  The district court correctly dismissed her complaint.

### B.  Biro's remaining arguments are foreclosed by McKinley v. Kaplan

Biro makes several additional arguments that the district court erred in dismissing her complaint.  She contends that her speech should be protected because her role on the Board was not an "advisory or policy-making role[]," the Board did not serve as a "public contact" for the City, and Biro was not an appointed representative of the City Commission.  These arguments are foreclosed by *McKinley*, which binds this panel, and the facts as Biro pleaded them.[14]

In *McKinley*, the plaintiff was a voluntary, unpaid member of her county's local "Film Board."  262 F.3d at 1147.  The Film Board was "one of several advisory boards created by the County Commission whose purpose it was to advise and make recommendations," and its members were appointed by the county commissioners.  *Id.*  The plaintiff made a statement at a public meeting of a different committee that contradicted the views of her appointing county commissioner and a recent

---

[14] *McKinley* does not employ the balancing test that we now use for cases involving the *Pickering* test, but it cites *Pickering*, has never been overruled, and its reasoning remains instructive.  *McKinley*, 262 F.3d at 1149 (noting that the balancing test requires that "we weigh the employee's First Amendment interest against the government's interest in promoting the efficiency of the public services it performs through its employees").

resolution passed by the county. *Id.* at 1148. Her statement was later quoted in the local newspaper, and the plaintiff also signed a resolution on behalf of the different committee asking the county commission to reconsider its position. *Id.* After determining that the plaintiff had taken positions advocating a direct break with the county's policy, the county commission removed the plaintiff from the Film Board. *Id.* The district court granted summary judgment for the county, finding that the plaintiff had failed to state a claim for First Amendment retaliation.[15] *Id.* at 1148–49.

We affirmed because we determined that, under the *Pickering* test, the county's interests outweighed those of the plaintiff. First, we noted that "governments have a strong interest in staffing their offices with employees that they fully trust, particularly when the employees occupy advisory or policy-making roles," and that the plaintiff was in a policymaking role because, even though the Film Board did not have decision-making authority, the Film Board "ma[d]e recommendations on all policy matters affecting the entertainment industry." *Id.* at 1150. Second, we noted that the plaintiff's role on the Film Board involved "some public contact on behalf of the County" because the Film Board was a "point of reference" for the local entertainment industry and held public meetings. *Id.* Finally, we reasoned that because the

---

[15] Though *McKinley* was decided at summary judgment, we address it here because the parties spend substantial portions of the briefing debating the applicability of *McKinley* to Biro's arguments. Accordingly, we cite *McKinley*'s reasoning in dismissing Biro's remaining arguments.

plaintiff had served as an appointed representative of the county and was obligated to support the county's interests, the government was entitled to remove her from the Film Board once she failed to support the county's interest. *Id.* at 1151.

Here, *McKinley* forecloses Biro's remaining arguments that her interests outweigh those of the City. First, like in *McKinley*, Biro's complaint evinces that her role on the Board was a policymaking role because, even though the Board lacked decision-making authority, the Board made suggestions and recommendations to the City about police conduct and reform. Second, just like the plaintiff in *McKinley*, the Board evaluated and reviewed the Department policies in meetings open to the public. Indeed, though Biro tries to argue that the Board was not a public-facing role, she acknowledges that the Board's purpose "was to foster transparency, communication, and trust between the police department and the citizens," which it did, in part, by meeting publicly. Finally, and contrary to her assertion on appeal, Biro was appointed to the Board by the City Commission. Though she alleges that she "was not a member appointed by an individual member of the City Commission" because she was nominated by the community, she does concede that she was still an "appointee."[16] Accordingly, and just like the plaintiff in *McKinley*,

---

[16] We acknowledge that Biro's nomination by the local community provides at least a minor distinction between this case and *McKinley*, 262 F.3d at 1151, but the fact remains that she was appointed and confirmed with the consent of the City Commission.

Biro's First Amendment retaliation claim for being removed from her position on the Board fails because the Board was a policymaking, public-facing role, and she was appointed by the City Commission which ultimately removed her.[17]

### IV.    Conclusion

Thus, we hold that the district court properly dismissed with prejudice Biro's complaint for First Amendment retaliation because she failed to demonstrate that her free speech interest outweighs the City's interest in the efficient and effective administration of government services.

**AFFIRMED.**

---

[17] The City also raises the argument that Biro has failed to plead causation adequately, but we need not address those concerns given that we find that her claim fails under *Pickering*.